Dakutak v. Dakutak, 1997 ND 76, 562 N.W.2d 750|N.D. Supreme Court|
Dakutak v. Dakutak, 1997 ND 76, 562 N.W.2d 750
[Go to Documents]
Filed Apr. 22, 1997
IN THE SUPREME COURT
STATE OF NORTH DAKOTA
1997 ND 76
Miriam Kay Dakutak, Plaintiff and Appellee
v.
John Fred Dakutak, Defendant and Appellant
Civil No. 960350
Appeal from the District Court for Cass County, East Central Judicial District, the Honorable Georgia Dawson, Judge.
AFFIRMED.
Opinion of the Court by Maring, Justice.
Craig M. Richie (argued), of Richie & Associates, P.O. Box 2172, Fargo, ND 58107, for plaintiff and appellee. Appearance by Miriam Kay Dakutak.
Bruce A. Schoenwald (argued), 17 South 7th St., Suite 203, Fargo, ND 58103, for defendant and appellant.
Dakutak v. Dakutak
Civil No. 960350
Maring, Justice.
[¶1] John Dakutak appealed a district court order construing and applying property division provisions of a prior divorce decree. We hold the district court correctly construed and applied the divorce decree, and we affirm the court's order.
[¶2] John and Miriam Dakutak were married in August 1980 and divorced in July 1987. They remarried each other in February 1989 and together have three children. In June 1992, Miriam filed a complaint seeking a second divorce from John. After extensive filings and proceedings, the court, the Honorable Everett Nels Olson presiding, entered a judgment on May 19, 1994, awarding Miriam a divorce.
[¶3] On June 14, 1996, John filed a motion to compel Miriam to comply with the divorce decree, alleging the decree requires Miriam to reimburse him for his payment of a $5,000 marital debt to the TriniService Credit Union. The trial court, the Honorable Georgia Dawson presiding, concluded John was not entitled to reimbursement from Miriam under the 1994 divorce decree. The court entered an order denying John's motion, and John appealed.
[¶4] The underlying facts are not in dispute. When John and Miriam remarried in 1989, John owned a 1978 Corvette. After their remarriage, John and Miriam borrowed $5,001.83 from TriniService Credit Union. John testified the money was used for marital debts such as paying bills, a vacation, and purchase of clothing. The 1978 Corvette was used as collateral to secure the loan. It is undisputed the Corvette was in John's possession until it was repossessed by the credit union in 1994, upon foreclosing on the loan. In March 1994, John paid the debt in full and redeemed the Corvette.
[¶5] On May 19, 1994, the divorce decree was entered, containing the following provisions relevant to this dispute:
14. In accordance with the Stipulation of the parties, [Miriam] and [John] shall each retain the remainder of personal property now in their respective possessions, subject to the indebtedness thereon . . . .
* * * * *
19. [Miriam] is responsible for payment of the Arne Carlson debt and the obligation to Triniservice Credit Union.
20. [John] is responsible for all remaining debts, actual or contingent, incurred by the parties to the date of their separation on May 6, 1991 . . . .
21. Should either party be required to pay a debt, liability, mortgage or lien that the other party is required to pay, then the paying party shall be held harmless and shall be indemnified by the other party for said payments, including appropriate costs and attorney fees.
In his motion to compel Miriam's compliance with the decree, John asserts Miriam was solely liable for the TriniService Credit Union debt and obligated to indemnify him for having paid that debt to redeem the Corvette. Miriam asserts she is liable under the divorce decree only for any deficiency remaining on the credit union debt after sale of the Corvette as collateral, and, because there is no deficiency, she has no liability and is not obligated to reimburse John. Judge Dawson, construing the divorce decree, concluded Judge Olson intended that Miriam be responsible only for any deficiency remaining after sale of the collateral and, when the debt was fully satisfied by the collateral, Miriam was absolved from liability.
[¶6] Interpretation of a judgment is a question of law, and an unambiguous judgment may not be modified, enlarged, restricted, or diminished. Sullivan v. Quist, 506 N.W.2d 394, 398 (N.D. 1993). If the same trial judge clarifies an original judgment, we afford the judge's clarification considerable deference. Neubauer v. Neubauer, 552 N.W.2d 793, 795 (N.D. 1996). When, however, one trial judge interprets the decree of another, the interpreting court is in no better position than we are to determine the original judge's intentions, and this court reviews such interpretations de novo. Botner v. Botner, 545 N.W.2d 188, 190 n.2 (N.D. 1996); Anderson v. Anderson, 522 N.W.2d 476, 478-479 (N.D. 1994). Following our rule on contract interpretation, the question whether a judgment is ambiguous is a question of law for the court to decide. See, e.g., Employers Reinsurance Corp. v. Landmark, 547 N.W.2d 527, 532 (N.D. 1996). There is an ambiguity when language can be reasonably construed as having at least two alternative meanings. See, e.g., Kief Farmers Co-op. Elevator Co. v. Farmland Mutual Insurance Co., 534 N.W.2d 28, 32 (N.D. 1995).
[¶7] We conclude the original divorce decree is ambiguous. In dividing the marital property the decree does not specifically refer to the 1978 Corvette. It does, however, explicitly state that John and Miriam shall each retain "the remainder of personal property now in their respective possessions." The Corvette was in John's possession when the divorce trial commenced in October 1993. The Credit Union seized it in December 1993, but John regained possession when he redeemed it in March 1994, two months before the court entered the divorce decree. John therefore retained the Corvette under the decree, but "subject to the indebtedness thereon." The decree also provides that Miriam is "responsible" for "the obligation to TriniService Credit Union." It also provides that, if a party is "required to pay a debt" that the other party "is required to pay," the paying party shall be "indemnified by the other party."
[¶8] The decree lends itself to at least two alternative reasonable meanings. First, as John argues, the court could have intended Miriam to be responsible for the entire credit union debt and to reimburse John for any amounts paid by him on that debt. A reasonable alternative interpretation, however, is that John retained the Corvette subject to its sale as collateral for the debt and Miriam would be personally liable only for the balance due, if any.
[¶9] The following unrefuted testimony by Miriam at the divorce trial in April 1994 is particularly relevant to gleaning the court's intent under the decree:
Q Now the second item there listed personal loans with Corvette and Fiero used as collateral at TriniService Credit Union, is that correct? That's the second item?
A Yes.
Q In the amount of $5,001.83?
A Yes.
Q What happened with -- Now you had testified to the Fiero is no longer in operating condition?
A Yes.
Q And that Corvette, what happened to that?
A The Corvette has been repossessed.
Q By TriniService?
A Yes.
Q And is it your intention to allow that to be able to be sold and the proceeds to be applied to the TriniService Credit Union debt?
A Yes.
Q Do you believe that the amounts of those two vehicles would satisfy this debt?
A Yes, it would be close.
Q And if there is any left over amounts what would you like? For instance, if there is any liability remaining would you agree to pay any liability remaining? To pay the rest of the loan?
A Yes.
[¶10] The trial court knew the Corvette had been repossessed for payment of the credit union debt. Yet, the court chose not to insert any language specifically requiring Miriam to reimburse John for that collateral but, instead, awarded property in each party's possession "subject to the indebtedness thereon."
[¶11] A judgment should be construed to give effect to each and every part of it and to bring all the different parts into harmony as far as this can be done by fair and reasonable interpretation. Sullivan v. Quist, 506 N.W.2d 394, 401 (N.D. 1993). Construing the provisions of this decree together, and in light of Miriam's testimony to the court on this issue, we conclude the trial court intended Miriam to be personally liable for the credit union debt only to the extent the collateral did not fully satisfy the debt. We further conclude the decree did not obligate Miriam to reimburse John for redeeming that collateral.
[¶12] We disagree with John that the indemnity clause under the decree requires a different interpretation. Under the decree the court made each party responsible for other specific debts which were not secured by collateral. We conclude the indemnity clause refers to those noncollateralized debts. If the indemnity clause were construed to require Miriam to indemnify John for the Corvette, the decree language that John takes his property "subject to the indebtedness thereon" would be meaningless. Our interpretation gives meaning to all parts of the language in dispute and harmonizes their operation and effect.
[¶13] In accordance with this opinion, the order of the court is affirmed.
[¶14]
Mary Muehlen Maring
William A. Neumann
Dale V. Sandstrom
Herbert L. Meschke
Gerald W. VandeWalle, C.J.