582 N.W.2d 382 (1998)
1998 ND APP 4
In the Interest of S.J.F.
S.J.F., J.C.F., Guardian ad Litem for S.J.F., and J.C.F., Plaintiffs and Appellants,
v.
R.C.W., Defendant and Appellee.
Civil No. 970394CA.
Court of Appeals of North Dakota.
July 27, 1998.
Review Denied August 19, 1998.
Dale R. Rivard (argued), Grand Forks, for plaintiffs and appellants.
Shirley A. Dvorak (argued), of Moosbrugger, Dvorak & Carter, Grand Forks, for defendant and appellee.
GLASER, Chief Judge.
[¶ 1] This is an appeal from judgment in a paternity/child-support bench trial. Neither party requested genetic testing. The trial court did not determine whether the defendant was or was not the father. Instead, the trial court decided that "the facts presented at trial are insufficient to support a finding that [R.C.W.] is the natural father of [S.J.F.]." The court ordered the case dismissed with prejudice. We remand to the trial court for preparation of more explicit findings.
[¶ 2] In its memorandum of decision denying a motion for new trial or motion to amend findings, the trial court stated that *383 "this Court has, first at trial, and now again,... finds that the preponderance of the evidence presented at trial does not establish paternity in this case."
[¶ 3] Evidence is insufficient if (1) there is a complete absence of proof on one or more essential elements of the claim, (2) opposing contradictory evidence of an element is at least equally persuasive, or (3) the evidence offered in support of a necessary element of a claim is sufficient on its face but is rejected by the court for some express reason. However, relevant evidence cannot be ignored, because the rejection of relevant evidence without a reason is action contrary to the evidence.
Although the district court, as trier of fact, is the judge of the credibility of expert witnesses and the weight to be given their testimony it cannot arbitrarily disregard such testimony.
Mansukhani v. Pailing, 318 N.W.2d 748, 751 (N.D.1982).
[¶ 4] A statement that evidence is insufficient is not a finding of fact made from the evidence but rather is a general assessment or evaluation of the evidence.
Conclusory, general findings do not constitute compliance with Rule 52(a), N.D.R.Civ.P.... More specifically, findings of fact which merely state that a party "has failed in its burden of proof" are inadequate under Rule 52(a).... Rather, the trial court must specifically state the subordinate facts upon which its ultimate factual conclusions rest.... The trial court's finding in this case that "[t]here has not been convincing evidence" to establish the confiscatory-price defense is similar to the conclusory findings rejected in [other cases]. It does not provide us with any understanding of the underlying factual basis for the trial court's ultimate conclusion.
Federal Land Bank of St. Paul v. Lillehaugen, 404 N.W.2d 452, 459 (N.D.1987) (Citations omitted).
[¶ 5] In its decision, the trial court reviewed § 14-17-04, N.D.C.C., which sets forth circumstances that give rise to a presumption of paternity. The trial court compared the facts to the presumptions and found that none of the presumptions of paternity applied to the defendant. The circumstances support this conclusion. However, the appellants contend that the trial court, in essence, concluded that because none of the presumptions applied, the plaintiff's claim had not been proved and by so doing ignored evidence that, taken as a whole, was sufficient to establish paternity.
[¶ 6] Section 14-17-11, N.D.C.C., provides that evidence relating to paternity may include:
1. Evidence of sexual intercourse between the mother and alleged father at any possible time of conception.
2. An expert's opinion concerning the statistical probability of the alleged father's paternity based upon the duration of the mother's pregnancy.
3. Genetic test results, weighted in accordance with evidence, if available, of the statistical probability of the alleged father's paternity. Verified documentation of the chain of custody of the genetic specimens is competent evidence to establish the chain of custody. A verified report obtained from an examiner appointed pursuant to section 14-17-10 must be admitted at trial unless a written objection to the testing procedures or the results of genetic analysis has been made at least ten days before trial or at an earlier time determined by the court.
4. Medical or anthropological evidence relating to the alleged father's paternity of the child based on tests performed by experts. If a man has been identified as a possible father of the child, the court may, and upon request of a party shall, require the child, the mother, and the man to submit to appropriate tests.
5. A voluntary acknowledgment of paternity executed under chapter 14-19.
6. All other evidence relevant to the issue of paternity of the child.
[¶ 7] The trial court's recitation of the evidence included a finding that the child was born between December 1982 and January *384 1983 and that the plaintiff and the defendant had an eight-year relationship during which they lived together from time to time, both before and after S.J.F. was born on September 30, 1983. The mother testified that she had sexual intercourse with the defendant during the possible time of conception and that she did not have sexual intercourse with any other man during that time. The defendant only testified he was not sure if he was in the Grand Forks area during the possible period of conception. The defendant did not offer any evidence to contradict the mother's testimony or offer any evidence pointing to some other man as the possible father.
[¶ 8] The testimony of the plaintiff, if credible, was clearly sufficient to establish the defendant's paternity of S.J.F. unless an important element of the evidence was rejected for some reason or at least equipoised by contrary evidence. Put another way, a finding that defendant was the father could have withstood appellate review.
[¶ 9] The trial court may have relied exclusively on the lack of a presumption in determining that the evidence was insufficient to establish paternity. The trial court made no findings that would outweigh or evenly balance the evidence pointing to paternity, nor did the court reject or specify a reason for rejecting testimony relating to paternity. Neither did it do so in its post-trial decision. Instead, the court simply "found" that paternity was not established by a preponderance of the evidence.
[¶ 10] The trial court may have believed that the mother was mistaken or lying, or that other unmentioned evidence balanced a critical element of the plaintiff's evidence. Given this possibility, we remand the case to the trial court with instructions to review the evidence and make more explicit findings. In making its findings and conclusions, any evidence the court rejected should be accompanied by its reason for doing so.
[¶ 11] The second issue in this case is whether the trial court erred in failing to order genetic testing. Section 14-17-10(1), N.D.C.C., provides that the trial court may, and upon request of a party shall, require the child, mother, or alleged father to submit to genetic testing of blood or other tissues. The trial court did not order genetic testing on its own motion, and neither party requested genetic testing before the trial court issued its decision. The plaintiffs requested genetic testing in conjunction with their motion for a new trial or to amend the findings, but the trial court refused the request.
[¶ 12] In Stark County Social Service Board v. R.S., 472 N.W.2d 222, 223 (N.D. 1991), the North Dakota Supreme Court ruled § 14-17-10(1), N.D.C.C., does not "require[] the court to compel genetic tests in response to a post-judgment motion, after parentage has been adjudicated ... [because] [t]here would be no finality to parental adjudications if we construed the statute as urged by [appellant]." Stark County involved a request for genetic testing made almost seven years after the father stipulated to paternity. Stark County does not preclude a trial court from granting a post-judgment request for genetic testing under all circumstances.
[¶ 13] In its initial decision, the trial court commented that "for some reason unknown to this Court, genetic testing was never requested." The trial court also stated: "It is unfortunate for [the child's] sake that genetic testing was never requested." In its post-trial decision, the court states: "Though the Court agrees that genetic testing would have helped the Court in making its decision, it is not required in any paternity proceeding." (Emphasis supplied)
[¶ 14] From the quotations set forth above, it is apparent that the trial court was concerned about the lack of genetic testing both before it made its initial decision and in its post-trial decision, but it made no reference to its own power to order genetic testing without a request from either party. Given the trial court's comments, we are puzzled by its failure to order genetic testing, or at least to consider ordering it on its own motion. Because we are remanding this case, the *385 further decision of the trial court should include, as part of the record, its reason for either ordering or declining to order genetic testing on its own motion, a technological procedure that is still an option in this proceeding.
[¶ 15] REMANDED.
[¶ 16] EUGENE A. BURDICK, Surrogate Judge and MICHAEL O. McGUIRE, District Judge, concur.