1998 ND 201

Elmer W. SCHMALLE, Plaintiff, Appellant and Cross–Appellee,

v.

Bettianne SCHMALLE, Defendant, Appellee and Cross–Appellant.

Civil No. 980114

Supreme Court of North Dakota.

Nov. 19, 1998.

Henry H. Howe, of Howe & Seaworth, Grand Forks, for plaintiff, appellant and cross-appellee.

Timothy W. McCann, of Lindquist, Jeffrey & Jensen, East Grand Forks, for defendant, appellee and cross-appellant.

SANDSTROM, Justice.

[¶1] In these post-judgment divorce proceedings, Elmer Schmalle appeals from a second and a third amended judgment, and Bettianne Schmalle cross-appeals from the third amended judgment. We reverse the trial court's modification of spousal support, affirm the court's clarification of Bettianne Schmalle's interest in Elmer Schmalle's military retirement benefits, affirm the court's decision Bettianne Schmalle's bankruptcy rendered inoperable a provision for indemnification of credit card debt assigned to her in the initial decree, and we remand with directions.

I

[¶2] Elmer and Bettianne Schmalle were married in October 1970. During the marriage, Elmer Schmalle served in the United States Air Force, and Bettianne Schmalle worked at several jobs, including one with Security Pacific National Bank beginning in 1984. In 1991, the parties divorced in California under a stipulated agreement. When the divorce decree was entered, the parties had two minor children, one born in 1974 and the other in 1979. The decree awarded Bettianne Schmalle custody of the children, ordered Elmer Schmalle to pay $280 per month per child for child support, reserved jurisdiction over spousal support, allocated the par-

ties' marital debt, and divided their marital property.

[¶3] In August 1993, the older child was no longer a minor, and the younger child began living with Elmer Schmalle in North Dakota. In 1995, the California decree was filed in North Dakota under N.D.C.C. ch. 28-20.1, the Uniform Enforcement of Foreign Judgments Act. In March 1995, Elmer Schmalle formally moved for custody of the younger child and sought child support from Bettianne Schmalle. A first amended judgment was entered awarding Elmer Schmalle custody and ordering Bettianne Schmalle to pay $330 per month in child support, beginning April 1, 1995.

[¶4] In October 1995, Elmer Schmalle moved to modify the first amended judgment, seeking to terminate the court's spousal support jurisdiction and to hold Bettianne Schmalle in contempt for failure to pay three credit card debts assigned to her by the initial divorce decree. Bettianne Schmalle responded North Dakota courts did not have jurisdiction over spousal support. She alternatively sought spousal support if the trial court ruled it had jurisdiction. After a February 1996 hearing, the court ordered Elmer Schmalle to pay $500 per month spousal support for four years, beginning March 1, 1996. The court ruled Bettianne Schmalle's bankruptcy rendered inoperable a provision for indemnification of credit card debt assigned to her in the initial divorce decree. A second amended judgment was filed on June 12, 1996. No notice of entry of this judgment was served on Elmer Schmalle until February 1997.

[¶5] Meanwhile, in December 1996, Bettianne Schmalle moved under N.D.R.Civ.P. 60 to clarify the original division of Elmer Schmalle's military pension. Elmer Schmalle resisted her motion and sought reconsideration of spousal and child support. In February 1997, the court heard those motions. After delay caused by the 1997 flood, the trial court, in January 1998, ruled on the motion to clarify the division of the parties' retirement benefits; terminated Bettianne Schmalle's child support obligation; and eliminated Elmer Schmalle's spousal support obligation, effective February 1,

1998. A third amended judgment was entered in February 1998. Elmer Schmalle appealed from the second and the third amended judgments, and Bettianne Schmalle cross-appealed from the third amended judgment.

[¶ 6] The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27-05-06 and 28-20.1-02. The appeals are timely under N.D.R.App.P. 4(a).[1] This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 28-27-01.

## II

[¶ 7] Elmer Schmalle contends the trial court erred in ordering him to pay Bettianne Schmalle spousal support in the June 1996 second amended judgment.

### A

■ [¶ 8] Elmer Schmalle argues the court's award of spousal support violated due process. He contends Bettianne Schmalle did not request modification of spousal support in a motion, a notice of hearing, a responsive pleading, or the "conclusion-summary of requested relief" part of her responsive brief. He thus asserts he did not have notice she was seeking modification of spousal support.

■ [¶ 9] Due process requires a party receive adequate notice and a fair opportunity to be heard. *See Shipley v. Shipley*, 509 N.W.2d 49, 55 (N.D.1993); *Gerhardt v. Robinson*, 449 N.W.2d 802, 804 (N.D.1989). In *Shipley*, at 55, we held a trial court's sua sponte reduction of spousal support during a contempt proceeding failed to provide the spousal support recipient with adequate notice and an opportunity to marshal evidence on the issue. In *Gerhardt*, at 804, this Court held a trial court's sua sponte reduction of

child support during an enforcement proceeding failed to provide the obligee with adequate notice and an opportunity to marshal evidence on the issue. In both *Shipley* and *Gerhardt*, issues about modifying the respective support obligations were not raised until the contempt and the enforcement hearings.

[¶ 10] Here, in October 1995, Elmer Schmalle moved to modify the first amended judgment to "terminate the alimony jurisdiction of the Court effective 1 November 1995." His motion raised modification of spousal support as an issue. In the body of Bettianne Schmalle's responsive brief, she argued the trial court did not have jurisdiction to modify the California court's reservation of spousal support jurisdiction. She alternatively argued "should the Court find that it does maintain jurisdiction, the support award should not be terminated, but rather, there should be an amount of spousal maintenance established." Bettianne Schmalle's responsive brief provided Elmer Schmalle with adequate notice she was seeking spousal support, and provided him with a fair opportunity to marshal evidence and be heard on the issue. We therefore reject his claim the trial court's June 1996 modification of spousal support denied him due process.

### B

■ [¶ 11] Elmer Schmalle contends the trial court clearly erred in modifying spousal support in the second amended judgment without a material change in circumstances. He contends the court's rationale for modifying spousal support was predicated on the prior change in custody of the younger child and on Bettianne Schmalle's resulting child support obligation. He argues neither that rationale nor any of the other factors cited by the court constitute a material change in

---

1. Elmer Schmalle was not served with notice of entry of the June 1996 second amended judgment until February 1997. The first affirmative actions by him in the record which constitute actual knowledge of the second amended judgment, *see Gierke v. Gierke*, 1998 ND 100, ¶¶ 11-12, 578 N.W.2d 522, are a December 30, 1996, request for an evidentiary hearing and a February 7, 1997, brief responding to Bettianne Schmalle's motion to clarify the June 1996 second amended judgment. Bettianne Schmalle's post-judgment motion to clarify had been made when Elmer Schmalle took those affirmative actions, and her motion tolled the time for appeal from the second amended judgment. *See* N.D.R.App.P. 4(a). The third amended judgment resolved Bettianne Schmalle's motion, and notice of entry of the third amended judgment was served on Elmer Schmalle in February 1998. The appeal and cross-appeal are timely under N.D.R.App.P. 4(a).

circumstances not contemplated by the parties when the initial decree, or the first amended judgment, was entered.

[¶ 12] A trial court's spousal support decision is treated as a finding of fact and will not be set aside on appeal unless clearly erroneous. *Wheeler v. Wheeler*, 419 N.W.2d 923, 925 (N.D.1988). To modify spousal support, a material change in circumstances must be shown; slight or moderate changes in the parties' relative incomes are not necessarily material. *Id.* A material change means something which substantially affects the parties' financial abilities or needs, and the reasons for changes in income must be examined as well as the extent the changes were contemplated by the parties at the time of the initial decree or a subsequent modification. *Wheeler v. Wheeler*, 548 N.W.2d 27, 31 (N.D.1996). A party claiming a material change in circumstances bears the burden of proof. *Cermak v. Cermak*, 1997 ND 187, ¶ 19, 569 N.W.2d 280.

[¶ 13] In awarding Bettianne Schmalle spousal support, the trial court reasoned she had moved with Elmer Schmalle many times while he was in the military, creating an unstable job situation for her; she did not have a high school diploma, which held her back from promotions; she had some health problems; she was now required to pay, rather than receive, child support because of the custody change; her living expenses in California now exceeded her income by over $300 per month; her gross income was about $23,700 per year; Elmer Schmalle's total taxable and nontaxable income was $44,932 per year; and he had a bachelor's degree and was an E–8 stationed at the Grand Forks Air Force Base. Based on those factors and the disparity in education and work history, the court awarded Bettianne Schmalle $500 per month in spousal support for four years, beginning March 1, 1996.

[¶ 14] The trial court did not specifically recite a finding of a material change in circumstances. Except for the circumstances arising from increased expenses for the change in custody, the factors cited by the court existed or were reasonably contemplated by the parties when the initial decree was entered. Those factors do not justify a modi-

fication of spousal support. *See Wheeler*, 548 N.W.2d at 31 (stating in order to modify spousal support, there must be a material change in circumstances not contemplated when original decree entered). The court cited the change in custody and resulting child support obligation as the principle reason for awarding Bettianne Schmalle spousal support. The court recognized Bettianne Schmalle's expenses then exceeded her income by over $300 per month, in part because her rent and utilities in California were high. Elmer Schmalle argues, as a matter of policy, the change in custody and resulting child support obligation are not a material change in circumstances justifying modification of spousal support. We agree.

[¶ 15] Section 14–09–09.7(3), N.D.C.C., creates a rebuttable presumption the amount of child support required under the child support guidelines is the correct amount of child support. Under N.D. Admin. Code § 75–02–04.1–09(2), the presumptively correct amount of child support may be rebutted only if a preponderance of evidence establishes a deviation from the guidelines is in the best interests of the supported children and the factual circumstances of the case satisfy specifically listed criteria. The list of criteria for rebutting the presumption is exclusive. *In Interest of L.D.C.*, 1997 ND 104, ¶ 8, 564 N.W.2d 298. A party urging a deviation from the presumptively correct amount of child support has the burden of proof. *Dalin v. Dalin*, 545 N.W.2d 785, 788 (N.D.1996).

[¶ 16] The child support guidelines plainly and directly prohibit a court from using an obligor's daily living expenses when setting child support. *Jarvis v. Jarvis*, 1998 ND 163, ¶ 32, 584 N.W.2d 84; *Horner v. Horner*, 549 N.W.2d 669, 670 (N.D.1996). In *Horner*, at 670, we explicitly rejected a child support obligor's argument public policy supports interpreting the guidelines to take into account the obligor's higher cost of living in California.

[¶ 17] We believe allowing the imposition of a child support obligation to constitute a material change in circumstances justifying an award of spousal support to the child

support obligor would indirectly defeat the public policy prescribed by the child support guidelines. We have often declined to construe statutes to allow a person to do indirectly what a statute directly prohibits. *E.g.,* *Earthworks, Inc. v. Sehn,* 553 N.W.2d 490, 494 (N.D.1996). We hold the imposition of a child support obligation does not constitute a material change in circumstances justifying an award of spousal support to the child support obligor. We conclude Bettianne Schmalle failed to show a material change in circumstances justifying the modification of spousal support. We therefore hold the court erred in awarding spousal support in the June 1996 second amended judgment, and we reverse the spousal support award.

[¶ 18] The trial court's June 1996 spousal support award increased Bettianne Schmalle's gross income for purposes of the court's calculation of her child support obligation. *See* N.D. Admin. Code § 75-02-04.1-01(5) (defining gross income as income from any source, in any form, including "spousal support payments received"). Because the court erred in awarding Bettianne Schmalle spousal support, we remand for recalculation of her child support obligation without including the spousal support in her gross income.

### C

[¶ 19] In her cross-appeal, Bettianne Schmalle argues the trial court erred in terminating her spousal support award in the February 1998 third amended judgment. Because we conclude the court erred in modifying and awarding spousal support in the second amended judgment, it is not necessary to consider the court's termination of the erroneously awarded spousal support in the third amended judgment.

### III

[¶ 20] Elmer Schmalle contends the trial court erred in clarifying the initial divorce decree's division of the parties' retirement accounts.

[¶ 21] The California divorce decree provided:

8. [Elmer Schmalle] shall be awarded as his sole and separate property: ... half

the community property interest in [Bettianne Schmalle's] employment pension benefits through Security Pacific National Bank, ...

9. [Bettianne Schmalle] shall be awarded as her sole and separate property: ... half the community property interest in [Elmer . Schmalle's] military retirement benefits through the United States Air Force ( [his] adjusted date of enlistment is 5-25-71. Date of marriage is 10-30-70 and date of termination of marital status is 6-1-91), ...

\*    \*    \*    \*    \*    \*

15. This paragraph lists information having to do with the pension plans of the parties. The date of marriage is 10-30-70, date of separation is 10-1-90. . . . [Bettianne Schmalle] started work at Security Pacific Bank in October 1984 and still works there. [Elmer Schmalle] entered the United States Air Force in December 1970. He had a break in service from December 1978 to May 1979. He is still in the United States Air Force. Adjusted entry date is May 25, 1971.

The court reserves jurisdiction over the Security Pacific Thrift Plus Plan # 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 of [Bettianne Schmalle] and the United States Air Force pension of [Elmer Schmalle]. Any accumulations before 10-30-70 or after 10-1-90 is the separate property of each. On interests between the dates of 10-30-70 and 10-1-90 each has a one half community property interest in the others pension.

In reference to the parties pension plans, both are restrained from withdrawing funds from or assigning or hypothecating any interest in the retirement benefits without prior approval of the court. Both parties are ordered to keep the other as the named beneficiary of any benefits payable or available in the event of his or her death and in the event that one party should violate this order in any fashion then the retirement benefits should immediately be valued and divided and the violating party or their estate should indemnify the other for any loss to him or her caused by the violator's failure to abide by

the court's orders or otherwise protect the others community property interest in the retirement benefits.

## A

[¶ 22] Elmer Schmalle argues Bettianne Schmalle was not entitled to equitable relief regarding the parties' retirement accounts, because she falsely testified she had not withdrawn the proceeds from her retirement account with Security Pacific National Bank. Bettianne Schmalle testified at the February 18, 1997, hearing she had not "touched" the proceeds from her retirement account. After the hearing, however, her attorney informed the court she had received $10,387.86 in proceeds from her retirement account. Elmer Schmalle argues her false testimony precludes her from receiving any past or future share of his retirement account.

[¶ 23] The trial court recognized Elmer Schmalle had retired from the Air Force effective July 1, 1996, and started receiving retirement benefits August 1, 1996, but Bettianne Schmalle had not received her share of his benefits from that date, which the court calculated as approximately $10,000. The court also recognized Elmer Schmalle was entitled to fifty percent of Bettianne Schmalle's retirement accumulations when they were withdrawn, plus a reasonable rate of return from the date of withdrawal. The court also considered credit card debts assumed by Bettianne Schmalle in the initial decree, but which Elmer Schmalle had paid, an issue we consider in part IV of this opinion, and "count[ed] the retirement payments to each as 'a wash' with neither party owing the other any money as to any past retirement." The court applied the *Bullock* formula[2] and awarded Bettianne Schmalle 38.46% of Elmer Schmalle's retirement benefits, effective February 1998.

[¶ 24] The trial court effectively balanced Bettianne Schmalle's false testimony against Elmer Schmalle's right to half of her retirement accounts, plus accumulations, and the approximately $10,000 in benefits she was entitled to, but had not received, from Elmer Schmalle's retirement accounts since he retired in July 1996. The court decided the parties' entitlement to past benefits was a "wash." We do not condone Bettianne Schmalle's testimony. We are not persuaded, however, that it would be equitable to deprive her of Elmer Schmalle's future retirement benefits, because she initially testified she had not withdrawn the proceeds from her retirement account and later corrected her testimony. We reject Elmer Schmalle's argument Bettianne Schmalle's false testimony precluded her from receiving a share of his future retirement benefits.

## B

[¶ 25] Elmer Schmalle argues the trial court impermissibly modified, rather than clarified, the California decree's division of the parties' retirement benefits.

[¶ 26] A property division may not be modified, but may be clarified. *Wastvedt v. Wastvedt*, 371 N.W.2d 142, 144 (N.D. 1985). The interpretation of a judgment is a question of law, and an unambiguous judgment may not be modified, enlarged, restricted, or diminished. *Dakutak v. Dakutak*, 1997 ND 76, ¶ 6, 562 N.W.2d 750. Whether a judgment is ambiguous is a question of law. *Id.* A judgment is ambiguous when it reasonably can be construed as having at least two alternative meanings. *Id.*

[¶ 27] Elmer Schmalle argues the California decree's property division clearly and unambiguously awarded Bettianne Schmalle fifty percent of his military retirement benefits on October 1, 1990, the date of the parties' separation. He asserts he would have been entitled to $936 in retirement benefits as of October 1, 1990, and Bettianne Schmalle was entitled to receive fifty percent of that amount, $468, from July 1, 1996. Bettianne Schmalle responds the California decree is ambiguous because one provision said the marriage was terminated on June 1, 1991, but another provision said any accumulations after October 1, 1990, are the parties'

---

2. *See Bullock v. Bullock,* 354 N.W.2d 904 (N.D. 1984). The trial court calculated the formula as follows:

$$\frac{20 \text{ years of marriage}}{26 \text{ years in service}} \times \frac{1}{2} = 38.46\%.$$

separate property. She also argues the decree is ambiguous because the California court reserved jurisdiction over the parties' retirement accounts.

[¶ 28] Under California law, all property acquired by married persons during a marriage is community property, Cal. Fam.Code § 760, but the earnings and accumulations of a spouse while "living separate and apart from the other spouse, are the separate property of the spouse." Cal. Fam.Code § 771. *See In re Marriage of Lehman,* 18 Cal.4th 169, 74 Cal.Rptr.2d 825, 955 P.2d 451, 454 (Cal.1998) (explaining all property acquired by spouses during marriage and before separation is community property); *In re Marriage of Adams,* 64 Cal.App.3d 181, 134 Cal. Rptr. 298, 301 (Cal.Ct.App.1976) (fixing community interest in pension benefits as date of separation and not date of dissolution).

[¶ 29] Here, the parties separated on October 1, 1990, and their marriage was dissolved, effective June 1, 1991. Under California law, the date of separation controls the community property interests in their retirement accounts. The initial decree follows California law and defines the parties' community property interests in their accounts as of the date of their separation, giving each "a one half community property interest in the others pension."

[¶ 30] California law allows a trial court to retain jurisdiction over the division of retirement benefits to address later changes affecting the benefits, including the appropriate apportionment when an employee spouse retires. *See In re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561, 567 (Cal.1976); *In re Marriage of Gowan,* 54 Cal.App.4th 80, 62 Cal.Rptr.2d 453, 456 (Cal.Ct.App.1997); *In re Marriage of Anderson,* 64 Cal.App.3d 36, 134 Cal.Rptr. 252, 254 (Cal.Ct.App.1976); *Adams,* 134 Cal. Rptr. at 300. In apportioning retirement benefits, California law recognizes the "right to retirement benefits is a right to 'draw[ ] from [a] stream of income that ... begins to flow' on retirement, as that stream is then defined," and the "stream's volume at retirement may depend on various events or conditions after separation and even after dissolution." *Lehman,* 74 Cal.Rptr.2d 825, 955 P.2d

at 454–55, quoting *In re Marriage of Cornejo,* 13 Cal.4th 381, 53 Cal.Rptr.2d 81, 916 P.2d 476, 478 (Cal.1996). California courts recognize the first years of employment during a marriage must be given just as much weight as the years after separation, and a post-separation increase in a pension's value from continued employment is not entirely separate property, because the pension's value ordinarily is dependent upon the total number of years of employment. *Lehman,* 74 Cal.Rptr.2d 825, 955 P.2d at 456 (holding a nonemployee spouse who holds a community property interest in an employee spouse's retirement benefits owns a community property interest in the latter's retirement benefits as enhanced by early retirement incentives); *In re Marriage of Judd,* 68 Cal. App.3d 515, 137 Cal.Rptr. 318, 321 (Cal.Ct. App.1977) (rejecting employee spouse's argument years of service after separation possessed a significantly greater value than years during marriage because employee spouse's subsequent salary increases did not alter or diminish nonemployee spouse's community interest in retirement benefits).

[¶ 31] Similar to our *Bullock* formula, under California law, the most frequently applied method of apportioning retirement benefits is the "time rule" in which the community property interest is a fraction of retirement benefits with the numerator representing the length of service during marriage and the denominator representing the total length of service by the employee spouse. *See Lehman,* 74 Cal.Rptr.2d 825, 955 P.2d at 461; *In re Marriage of Henkle,* 189 Cal.App.3d 97, 234 Cal.Rptr. 351, 352 (Cal.Ct.App.1987); *Judd,* 137 Cal.Rptr. at 321. In *Judd,* at 321, the court explained the rationale for the "time rule":

> Where the total number of years served by an employee-spouse is a substantial factor in computing the amount of retirement benefits to be received by that spouse, the community is entitled to have its share based upon the length of service performed on behalf of the community in proportion to the total length of service necessary to earn those benefits. The relation between years of community service to total years of service provides a fair gauge

of that portion of retirement benefits attributable to community effort.

[¶ 32] Here, neither Elmer Schmalle nor Bettianne Schmalle had retired when the California divorce decree was entered in 1991. The California trial court reserved jurisdiction over the retirement accounts ostensibly to make an appropriate apportionment of benefits when each spouse retired. We reject Elmer Schmalle's argument the California decree awarded Bettianne Schmalle fifty percent of his retirement benefits as of the date of separation, October 1, 1990, because his argument ignores that the value of his retirement benefits is dependent upon his total years of employment. *See Lehman*, 74 Cal.Rptr.2d 825, 955 P.2d at 456. Rather, we construe the decree in light of California law on the division of retirement benefits to allow the trial court to reserve jurisdiction and issue an order applying the "time rule" to determine Bettianne Schmalle's community property interest in Elmer Schmalle's retirement benefits when he retired. The *Bullock* formula employed by the trial court follows the time rule, and we conclude the trial court did not err in clarifying and construing the language of the California judgment to apply the *Bullock* formula to Elmer Schmalle's military retirement benefits.

## C

[¶ 33] Elmer Schmalle asserts the trial court's application of the *Bullock* formula erroneously calculated the numerator for years of service during the marriage, because the court disregarded his "break in service from December 1978 to May 1979" with "an adjusted entry date of 25 May 1971." Elmer Schmalle argues the correct numerator should have been 19.34 years of service during the marriage, instead of the twenty years used by the trial court. *See* fn. 2. Bettianne Schmalle responds if the numerator is changed because of Elmer Schmalle's break in service, the total number of years of service in the denominator also must be adjusted. She claims the appropriate formula

would result in her receiving 38.5 percent of Elmer Schmalle's military retirement benefits.[3] Elmer Schmalle did not respond to her contention. Because we remand for recalculation of Bettianne Schmalle's child support obligation, we also direct the trial court to make appropriate adjustments to the *Bullock* formula.

## IV

■ · [¶ 34] Elmer Schmalle contends the trial court erred in deciding Bettianne Schmalle's bankruptcy rendered inoperable a provision for indemnification of credit card debt assigned to her in the initial decree.

[¶ 35] The initial decree ordered Bettianne Schmalle to pay debts on three credit cards and "hold [Elmer Schmalle] free and harmless." In October 1995, Bettianne Schmalle filed for relief under chapter 7 of the Bankruptcy Code, seeking discharge of her debts, including the three credit card obligations. She was subsequently discharged by the bankruptcy court in January 1996, and relieved of her obligation for those debts. Meanwhile, Elmer Schmalle sought to enforce the hold harmless provision of the initial decree when creditors began pursuing him for the three credit card debts. The trial court ruled the bankruptcy rendered inoperable the hold harmless provision of the initial decree, because the debt was part of the parties' property division and there was "no indication or evidence by [Elmer Schmalle] that the indemnification provision amounts to support, alimony, or maintenance."

[¶ 36] 11 U.S.C.A. § 523, says a bankruptcy discharge under chapter 7 does not discharge an individual debtor from any debt

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a govern-

---

**3.** She contends the appropriate formula would be

$$\frac{19.34 \text{ years of service during marriage}}{25.098 \text{ total years of service}} \times \tfrac{1}{2} = 38.5\%.$$

mental unit, or property settlement agreement, . . .

. . .

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless-

    (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

    (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor;

[¶ 37] Under 11 U.S.C.A. § 523(5), obligations characterized as spousal or child support are not dischargeable in bankruptcy. Before 1994, if an obligation was determined to be a property division, it was dischargeable in bankruptcy. *See In re Straub,* 192 B.R. 522, 527–28 (Bkrtcy.D.N.D.1996); *In re MacDonald,* 69 B.R. 259, 277 (Bkrtcy.D.N.J. 1986). The Bankruptcy Reform Act of 1994 enacted 11 U.S.C.A. § 523(15) as an exception to discharge to supplement paragraph (5) to cover debts arising out of a divorce decree which are not in the nature of alimony, maintenance, or support, but justifiably should not be discharged. 4 Collier on Bankruptcy ¶ 523.21 (15th Ed. Rev.1998). When 11 U.S.C.A. § 523(15) was enacted, Congress also enacted a change to § 523(c)(1) to add paragraph (15) debts to the list of debts automatically discharged unless the creditor files an action in bankruptcy court to have the debt declared nondischargeable. 4 Collier on Bankruptcy at ¶ 523.21. Under those provisions, a debt from a property division will be automatically discharged unless a non-debtor spouse brings an adversarial proceeding in bankruptcy court to have the debt declared nondischargeable. *Id. See Straub,* 192 B.R. at 527–28 (refusing to discharge property division debt).

[¶ 38] Here, the trial court decided the credit card debt was part of the property division, and there was "no indication or evidence by [Elmer Schmalle] that the indemnification provision amounts to support, alimony, or maintenance." Elmer Schmalle was listed as a creditor in the bankruptcy proceeding and was given notice of the bankruptcy proceeding. He thus had an opportunity to contest the dischargeability of the credit card debt in bankruptcy court. Under these circumstances, we conclude the trial court did not err in ruling the bankruptcy discharge rendered the hold harmless provision inoperable.[4]

## V

[¶ 39] Bettianne Schmalle requests attorney fees for this appeal under N.D.C.C. § 14–05–23. The trial court ordered the parties to be responsible for their own costs and attorney fees for proceedings before the trial court. On appeal, Bettianne Schmalle has not challenged the court's order on attorney fees. We are not persuaded there is a disparity in the parties' earning capacities which suggests Bettianne Schmalle is entitled to attorney fees for this appeal. *See Lovin v. Lovin,* 1997 ND 55, ¶ 22, 561 N.W.2d 612. We therefore reject her request for attorney fees.

## VI

[¶ 40] We reverse the trial court's modification of spousal support, affirm the court's clarification of Bettianne Schmalle's interest in Elmer Schmalle's military retirement benefits, affirm the court's decision Bettianne Schmalle's bankruptcy rendered inoperable the provision for indemnification of credit card debt assigned to her in the initial di-

---

4. We also recognize the trial court effectively factored the credit card debt into its analysis of the parties' rights to the other's retirement benefits and concluded their rights to past retirement benefits was " 'a wash.' " *See* part III A of this opinion.

vorce decree, and we remand for proceedings consistent with this opinion.

[¶ 41] VANDE WALLE, C.J., and NEUMANN and MARING, JJ., concur.

[¶ 42] The Honorable Carol Ronning Kapsner was not a member of the Court when this case was heard and did not participate in this decision.

