2000 ND 158

### In the Interest of S.J.F.

**S.J.F., J.C.F., Guardian ad Litem for S.J.F., and J.C.F., Plaintiffs and Appellees,**

v.

**R.C.W., Defendant and Appellant.**

**Nos. 990356, 20000036.**

Supreme Court of North Dakota.

Aug. 18, 2000.

■■■■■■■■■■■■

Dale Richard Rivard, Grand Forks Child Support Enforcement Unit, Grand Forks, N.D., for plaintiffs and appellees.

Shirley A. Dvorak, Moosbrugger, Dvorak & Carter, Grand Forks, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] R.C.W. ("Roger," a pseudonym) appeals from a judgment and an amended judgment finding him to be the father of S.J.F. ("Susan," a pseudonym) and ordering him to pay child support. We affirm.

I

[¶ 2] Roger and J.C.F. ("Jane," a pseudonym) began dating in 1979. Jane was widowed and had four children. The parties continued what they described as an "on-and-off" relationship, including lengthy periods when they lived together, until 1988. Jane became pregnant with Susan in December 1982 or January 1983. Roger and Jane lived together in Grand Forks from February 1983 until some time after Susan was born in September 1983.

[¶ 3] When Roger moved to Ohio in 1986, Jane and Susan went to live with him. Jane and Susan returned to Grand Forks in 1987. Throughout this entire time frame, and up until 1990, Roger provided financial assistance, including monthly checks when the parties were not living together, to Jane and her children.

[¶ 4] From 1990 until 1996 there was no contact between Roger and Jane. In June 1996, Jane commenced this paternity action against Roger with the assistance of the Regional Child Support Unit. The case was tried on April 10, 1997. Jane testified Roger was the only man she had sexual intercourse with during the time Susan was conceived. Roger admitted the parties had engaged in sexual intercourse during their relationship, but was not sure if he was in North Dakota or Ohio in December 1982 and January 1983 because his company was restructuring at that time. Neither side requested genetic testing to determine paternity. The trial court concluded the evidence was insufficient to support a finding that Roger was Susan's father and dismissed the action.

[¶ 5] Jane and Susan filed a post-trial motion to amend the findings of fact or for a new trial. They also for the first time sought genetic testing. The court denied the motions.

[¶ 6] Jane and Susan appealed, arguing the trial court had erred in failing to make specific findings of fact on paternity and in failing to order genetic testing on its own motion. The case was assigned to the Court of Appeals. That Court remanded to the trial court, concluding the trial court had erred in failing to make specific findings on paternity and in failing to consider ordering genetic testing on its own motion. *See In re S.J.F.*, 1998 ND APP 4, 582 N.W.2d 382. Roger's petition to this Court for review of the Court of Appeals' decision was denied. *See* N.D.C.C. § 27–02.1–06.

[¶ 7] On remand, the trial court ordered the parties to submit to genetic testing. Roger petitioned this Court for a writ of certiorari, asserting the trial court had exceeded its authority on remand by ordering genetic testing. We denied the petition on November 25, 1998.

[¶ 8] Genetic testing performed in February 1999 showed a 99.88 percent probability that Roger was Susan's father. Several hearings followed, and Roger was ordered to provide his tax returns for 1996, 1997, and 1998. On October 15, 1999, the trial court entered a memorandum decision and order finding that Roger is Susan's father and ordering him to pay child support of $830 per month commencing November 1, 1999. The court also ordered Roger to pay back child support for March through October 1999, taking into consideration that the testing es-

tablishing paternity occurred in February 1999. A judgment was entered on October 22, 1999, incorporating those provisions and further providing that back child support for the period between June 1996, when the paternity action was filed, and February 1999 would be ordered after receiving additional evidence.

[¶ 9] At the direction of the trial court, Jane submitted an affidavit outlining her expenses for Susan from June 1996 through February 1999. The court ordered back child support for that period in the amount of $21,912, and an amended judgment was entered on January 28, 2000. Roger has appealed from the October 22, 1999, judgment and the January 28, 2000, amended judgment.

## II

[¶ 10] Roger asserts the trial court failed to comply with the mandate of the Court of Appeals by ordering genetic testing and allowing additional evidence on remand.

[¶ 11] On the first appeal, the Court of Appeals addressed two issues: whether the trial court had failed to make specific findings of fact on paternity, and whether the trial court erred in failing to order genetic testing on its own motion. On the first issue, the Court of Appeals concluded the trial court's "finding" that the evidence was insufficient to establish paternity was a general assessment of the evidence, not a finding of fact. *S.J.F.*, 1998 ND APP 4, ¶ 4, 582 N.W.2d 382. The Court of Appeals concluded it was impossible from the record to determine the basis for the trial court's decision, and remanded with directions the trial court review the evidence, make explicit findings, and explain its rationale. *Id.* at ¶¶ 9–10.

[¶ 12] On the second issue, the Court of Appeals concluded it was unclear whether the trial court had properly considered its own authority to order genetic testing in a paternity case. *Id.* at ¶ 14; *see* N.D.C.C. § 14–17–10(1). The Court of Appeals therefore directed that, on remand, "the further decision of the trial court should include, as part of the record, its reason

for either ordering or declining to order genetic testing on its own motion, a technological procedure that is still an option in this proceeding." *S.J.F.*, at ¶ 14.

### A

[¶ 13] Roger argues the trial court exceeded its authority upon remand, and the Court of Appeals' opinion did not authorize it to order genetic testing and take further financial evidence. Roger asserts the Court of Appeals intended only a qualified remand for the limited purpose of allowing the trial court to make more explicit findings of fact upon the evidence which had already been presented. He characterizes the last line of the opinion, in which the Court of Appeals directs that genetic testing is still an available option, as "dictum."

[¶ 14] Resolution of this issue requires us to interpret the judgment of the Court of Appeals. Interpretation of a judgment is a question of law, and an unambiguous judgment may not be modified, enlarged, restricted, or diminished. *Greenwood v. Greenwood,* 1999 ND 126, ¶ 8, 596 N.W.2d 317; *Schmalle v. Schmalle,* 1998 ND 201, ¶ 26, 586 N.W.2d 677. Language contained in a judgment that is clear and unambiguous must be construed to give effect to the unambiguous language. *Webster v. Regan,* 2000 ND 89, ¶ 13, 609 N.W.2d 733. The determination whether a judgment is ambiguous is a question of law. *Greenwood,* at ¶ 8; *Schmalle,* at ¶ 26. A judgment should be construed to give effect to each and every part of it and to bring all the different parts into harmony, if this can be done by fair and reasonable interpretation. *Dakutak v. Dakutak,* 1997 ND 76, ¶ 11, 562 N.W.2d 750.

[¶ 15] We construe the Court of Appeals' judgment to clearly and unambiguously authorize the trial court to order genetic testing on its own motion upon remand. The Court of Appeals specifically stated genetic testing "is still an option in this proceeding," and directed the trial court on remand to "include, as part of the record, its reason for either ordering or

declining to order genetic testing on its own motion." *S.J.F.*, 1998 ND APP 4, ¶ 14, 582 N.W.2d 382. If, as Roger contends, the Court of Appeals only intended for the trial court to further explain its reasons for declining to order testing in the previous proceedings, its language indicating testing is still an available option and directing the court to explain its reasons for "ordering or declining to order" testing would be mere surplusage.

[¶ 16] We do not agree with Roger's contention that this language is mere dictum. This language is included in the last sentence of the opinion, in which the Court of Appeals explained its directives on remand. Construing the judgment to give effect to each and every part of the judgment, *Dakutak*, 1997 ND 76, ¶ 11, 562 N.W.2d 750, we conclude the judgment clearly authorized the trial court to order genetic testing upon remand.

### B

[¶ 17] Roger argues the trial court's decision to order genetic testing upon remand violates the public policy favoring finality in judicial proceedings, and allowed Jane and Susan to shift their trial strategy and get a second chance to prove their case. The Court of Appeals explicitly directed that genetic testing on the trial court's own motion was "still an option in this proceeding." The decision of the Court of Appeals became final when we denied Roger's petition to review it. Once an appellate court has finally determined a legal question and remanded the case for further proceedings, its decision becomes the law of the case and will not be differently determined on a subsequent appeal in the same case. *State v. Burckhard*, 1999 ND 64, ¶ 7, 592 N.W.2d 523; *Tom Beuchler Construction, Inc. v. City of Williston*, 413 N.W.2d 336, 339 (N.D.1987). Thus, the Court of Appeals' decision that genetic testing was still an option upon remand became the law of the case.

### C

[¶ 18] Roger asserts the trial court's decision to allow Jane and Susan to present additional financial evidence exceeded the scope of the remand.

[¶ 19] After the trial court had ordered genetic testing and found paternity based upon the results of those tests, the court was required to consider an appropriate award of child support. *See* N.D.C.C. § 14-17-14. By that time, more than two years had passed since the original 1997 trial. Roger's tax returns for the interim would have been unavailable at the time of the original trial, and constituted the best evidence of his financial condition during that time frame. Furthermore, an award of prospective child support should be based upon the parties' most current financial information. *See* N.D. Admin. Code § 75-02-04.1-02(7) and (8). Similarly, evidence of Jane's expenses in raising the child while the action and appeals were pending would have been unavailable at the time of trial as well.

[¶ 20] The Court of Appeals authorized the trial court to order genetic testing, and it was clearly foreseeable the result of that testing might create a finding of paternity. Under these circumstances, the trial court did not exceed the scope of the remand by allowing evidence of the parties' current financial circumstances for the purposes of determining child support at that time.

### III

[¶ 21] Roger challenges the trial court's award of back child support for the period from June 1996 through February 1999. Roger does not challenge the amount of support awarded for that period or the award of support from March 1999 on, but argues the lengthy delay in bringing the paternity action, and Jane and Susan's failure to earlier request genetic testing, makes it inequitable to order him to pay child support for any period prior to February 1999, when the genetic test results established paternity.

[¶ 22] Roger relies upon N.D.C.C. § 14-17-14(4), which authorizes the court to award back child support in a

paternity case under N.D.C.C. ch. 14–17. *See Rydberg v. Johnson,* 1998 ND 160, ¶ 9, 583 N.W.2d 631. At the time relevant to this case,[1] N.D.C.C. § 14–17–14(4) provided, in pertinent part:

> The court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just.

The determination of back child support under N.D.C.C. § 14–17–14(4) lies within the trial court's discretion, and its decision will be reversed on appeal only if the court abused its discretion. *Rydberg,* at ¶ 6. A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Berg v. Berg,* 2000 ND 36, ¶ 22, 606 N.W.2d 895.

[¶ 23] Roger argues our opinion in *Rydberg* is controlling, and requires a determination the trial court abused its discretion in allowing back child support in this case. *Rydberg* is clearly distinguishable. In that case, the mother brought a paternity action in 1996, when the child was thirteen years old. She sought ten years of back child support, prior to the date the action was filed. Furthermore, the evidence showed that for much of that time the child resided with the father's mother, not the mother. The trial court denied back child support. On appeal, we concluded the trial court did not abuse its discretion when it refused to order back child support under those circumstances. *See Rydberg,* 1998 ND 160, ¶¶ 11–12, 583 N.W.2d 631.

[¶ 24] By contrast, in this case Jane and Susan never sought child support for any time prior to June 1996, when Roger was served with the paternity action. For all times during which support is sought Jane had custody of and provided all support for Susan. Although we recognize there was a lengthy delay in initiating the paternity action, that delay has inured to the benefit of Roger in this case because Jane and Susan have not sought child support for that period.

[¶ 25] Roger also asserts it is inequitable to order back child support for the time from June 1996 to February 1999 because it was Jane and Susan's failure to timely request genetic testing which caused the delays in these proceedings. The trial court considered these factors and ordered back child support commencing in June 1996. Under the circumstances of this case, we conclude the trial court did not abuse its discretion in awarding back child support.

[¶ 26] The judgment and amended judgment are affirmed.

[¶ 27] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., concur.

---

1. The parties agree the 1999 amendment to N.D.C.C. § 14–17–14 does not apply in this case. *See* N.D. Sess. Laws ch. 141, § 12.