2000 ND 20

**Myrtle G. PEARSON, Plaintiff and Appellee,**

v.

**Elof G. PEARSON, Defendant and Appellant.**

**No. 990018.**

Supreme Court of North Dakota.

Feb. 22, 2000.

Rehearing Denied April 5, 2000.

Sherry Mills Moore, Foss and Moore, Bismarck, for plaintiff and appellee.

Robert S. Rau, Bosard, McCutcheon & Rau, Ltd., Minot, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Elof Pearson appeals from an order denying his motion to reduce or terminate spousal support and requiring him to pay $4,000 in attorney fees. Because the trial court did not err in concluding Myrtle has not remarried, did not clearly err in finding no material change in circumstances justifying a change in spousal support, and did not abuse its discretion in awarding the attorney fees, we affirm.

I

[¶ 2] Elof and Myrtle Pearson married on March 9, 1960. In 1993, Myrtle sued for a divorce, seeking spousal support, a

fair and equitable division of the parties' property, and attorney fees and costs. In August 1994, Elof and Myrtle informed the trial court they had reached an agreement to settle the divorce action. During the proceeding, the following discussion occurred:

> MYRTLE'S ATTORNEY: I would also add for the Court that Mr. Rau and I will word the judgment so that the alimony or spousal support is properly deductible by Mr. Pearson. There is certain language that must be included, such as it extends until her death or until his death, that type of thing so——
> ELOF'S ATTORNEY: Remarriage. Both of the lawyers are familiar with it.
> MYRTLE'S ATTORNEY: Right.

Myrtle's attorney prepared the divorce judgment; it recited the pertinent portion of the agreement in the following manner:

> During his lifetime, the Defendant shall be allowed to live in the home of the parties.... Defendant shall be allowed to farm the parties' real estate....
>
> During his lifetime, Defendant shall pay to the Plaintiff the sum of $2,250.00 per month, in the nature of permanent alimony and/or spousal support for the rights set out in the foregoing paragraph. Said payments shall begin September 1, 1994 and shall continue on the first of each month thereafter until Plaintiff's death or Defendant's death, whichever occurs first.

The judgment did not provide remarriage as a condition to terminate the monthly payments, and Elof did not move to amend it to include a remarriage provision.

[¶ 3] In late 1994 or early 1995, Myrtle began cohabiting with Dewaine McLeod. In November 1997, Myrtle and McLeod moved from Saskatchewan, Canada, to Alberta, Canada, where they purchased a home. They have a joint bank account for making mortgage payments and another for paying common household expenses.

In Canadian tax and health insurance forms, Myrtle designates herself as a common law spouse. Myrtle and McLeod both suggest being able to "just walk away" with "no ties attached" is a benefit of their relationship.

[¶ 4] In July 1998, Elof moved the trial court to reduce or eliminate his spousal support obligation, contending Myrtle and McLeod's relationship constituted a marriage or, at least, a significant change in circumstances justifying the elimination or reduction of support. Elof stipulated his ability to pay support was not at issue.

[¶ 5] The trial court found Myrtle was not married to, or supporting, McLeod and McLeod was not supporting her. The trial court consequently determined there was no change in circumstances justifying a change in spousal support. The trial court awarded Myrtle $4,000 in attorney fees. An Order Denying Motion and Granting Attorney's Fees was filed on December 28, 1998. Elof appealed.

## II

■ [¶ 6] Elof suggests Myrtle and McLeod's relationship is a common law marriage compelling termination of his spousal support obligation pursuant to the parties' original oral agreement or by operation of law. Although Elof suggests the dialogue between the attorneys quoted above constituted an agreement to include remarriage as a condition for terminating spousal support, a fair reading is the agreement was to comply with the requirements for spousal support under the Internal Revenue Code. Section 71, I.R.C. (1986), in effect at the time did not require remarriage as a condition for terminating alimony. We decline to import a term not provided in the judgment. Had Elof believed the judgment did not reflect the agreement, his recourse was to seek to have the judgment amended. Elof's argument regarding marriage must rest on the assumption of a common law marriage[1]

1. Both parties acknowledge there was no formal marriage or contract of marriage and

and our prior case law regarding marriage as a basis for terminating spousal support.

■ [¶ 7] Generally, remarriage of a spousal support recipient creates a prima facie case to terminate spousal support unless there are extraordinary circumstances justifying the continuance of alimony. *Roen v. Roen*, 438 N.W.2d 170, 173 (N.D.1989).

■ [¶ 8] Section 14–03–08, N.D.C.C., provides "[a]ll marriages contracted outside of this state, which are valid according to the laws of the state or country where contracted, are valid in this state." Although a common law marriage cannot be entered into in North Dakota,[2] a common law marriage shown to be validly entered into in Canada may be entitled to recognition in North Dakota under N.D.C.C. § 14–03–08.[3] The proponent of the common law marriage bears the burden of establishing its validity under the law of the foreign jurisdiction. *See In re Peterson's Estate*, 22 N.D. 480, 134 N.W. 751, 759 (1912) (concluding the proponent of the common law marriage, who claimed the right of a spouse to inherit from a decedent, failed to establish its existence under the laws of Michigan, the place it was allegedly entered into); *see also Brissett v. Sykes*, 313 Ark. 515, 855 S.W.2d 330, 332 (1993); *Milburn v. Milburn*, 694 N.E.2d 738, 739–40 (Ind.App.1998).

[¶ 9] From the authorities provided by Elof, it is unclear whether Myrtle and McLeod's relationship would be considered a common law marriage. Under the Alberta law provided, a "spouse" includes "a party to a common law relationship" and

"a common law relationship" is one "between 2 people of the opposite sex who although not legally married to each other continuously cohabited in a marriage-like relationship for at least 3 years." Domestic Relations Amendment Act, R.S.A., 1999. Elof has not provided authority on what constitutes "a marriage-like relationship." It is unclear whether an Alberta court would find a "marriage-like relationship" exists where the parties are financially independent; assert they enjoy the ability to break off their relationship with no strings attached; do not share a common last name or otherwise hold themselves out as married; and do not share assets, except for accounts for mortgage and household expenses.

■ [¶ 10] We are not convinced Elof has conclusively established a remarriage that must be recognized under N.D.C.C. § 14–03–08, to make a prima facie case to terminate spousal support. However, it is unnecessary to determine whether a common law marriage exists, because even if we assume its existence, the facts of this case would demonstrate extraordinary circumstances requiring the continuance of spousal support because of the nature of the parties' agreement incorporated into the judgment described under our analysis of changed circumstances. The trial court did not err in determining Myrtle and McLeod's relationship does not compel termination of Elof's support obligation.

III

[¶ 11] Emphasizing Myrtle and McLeod's cohabitation, sharing of household duties, commingling of assets, and

---

only a Canadian common law marriage could possibly exist. Myrtle and McLeod testified nothing prevented them from terminating the relationship at any time without an obligation to the other. In his brief, Elof asserts "[t]he common-law spouse status that the parties entered into is by operation of law. They did not execute any written agreement for that status."

2. *Cermak v. Cermak*, 1997 ND 187, ¶¶ 7, 9, 569 N.W.2d 280.

3. Generally, common law marriages are based on evidence of an agreement between the parties demonstrating their intent to be married. *See* 52 Am.Jur.2d *Marriage* § 48 (1970) (explaining "[a]n absolute requirement of any valid marriage, common-law or ceremonial, is that the parties must mutually consent or agree to take each other as husband and wife").

mutual support, Elof argues there was a material change in circumstances and the trial court clearly erred by failing to modify his support obligation.

[¶ 12] Spousal support payments may be modified only upon a showing of a material change of circumstances which justifies a modification. *Schmalle v. Schmalle*, 1998 ND 201, ¶ 12, 586 N.W.2d 677. A "material change" is something which substantially affects a party's financial abilities or needs, and the reason for changes in income must be examined as well as the extent the changes were originally contemplated by the parties. *Wheeler v. Wheeler*, 419 N.W.2d 923, 925 (N.D. 1988). The trial court's determination of whether there has been a material change of circumstances and whether the change justifies a modification of spousal support are findings of fact that will not be overturned unless they are clearly erroneous. *Huffman v. Huffman*, 477 N.W.2d 594, 596 (N.D.1991).

[¶ 13] Here, the trial court determined there was no significant change in Myrtle's financial condition and Myrtle and McLeod's cohabitation was not a material change in circumstances. Evidence before the trial court included Myrtle's income tax returns which indicated her income has not significantly changed since the divorce. Myrtle and McLeod testified they do not financially support each other and only share common expenses such as mortgage payments and household goods. No evidence refuted their testimony. The trial court accordingly acknowledged Myrtle and McLeod have some common accounts and own some property together but found Myrtle and McLeod "can clearly separate out their funds," "[e]ach has adequate income to care for themselves as well as their extended family members," and there is "no evidence that one is dependent on the other." The trial court also noted "[t]heir love and affection and support for one another and their habits and their things they do together are as I see no different than any people who cohabitate [sic]."

[¶ 14] In *Cermak v. Cermak*, 1997 ND 187, 569 N.W.2d 280, we explained mere cohabitation is not a material change in circumstances justifying a change in spousal support. Emphasizing cohabitants lack the permanent benefits of a marriage, we reasoned although cohabitants may voluntarily contribute to each other's support, they have no legal obligation to do so. *Id.* at ¶ 10. Any support the obligee may receive from the cohabitant is provided from the cohabitant's benevolence and comes with no reciprocal or continuing obligation. *Id.* Under such circumstances, "[t]he length of [the obligee's] relationship is unknown; it may last until [the obligee's] death, or may sour tomorrow." *Id.*[4]

4. Elof also suggests there is a material change in circumstances because, under Alberta law, McLeod must provide support for Myrtle. The Court of Appeal of Alberta indicated a common law spouse may be entitled to spousal support. *Taylor v. Rossu*, 161 D.L.R. (4th) 266 (1998). In *Taylor*, the court invited the legislature to define a "common law spouse" and to allow such person to seek support. *Id.* at ¶¶ 150–51, 156. The court indicated the legislature may provide that couples who want to avoid the legal obligations of marriage "may be able to avoid support obligations if they have structured their affairs in a way that did not result in economic disadvantage to either party." *Id.* at ¶¶ 147–48.

After *Taylor*, the Alberta Legislature passed the Domestic Relations Amendment Act which entitles a person from a common law relationship to seek support. R.S.A., 1999. Under the Act, a "common law relationship" is one "between 2 people of the opposite sex who although not legally married to each other continuously cohabited in a marriage-like relationship for at least 3 years." *Id.* at § 2(b)(i). A court may, as it "thinks reasonable," order support when the common law spouses "are living separate and apart." *Id.* at § 5. The court must consider any order, agreement, or arrangement relating to support. *Id.*

In light of *Taylor*, we are not convinced an Alberta court would "think[ ][it] reasonable" to award Myrtle support; she and McLeod do not support each other and can clearly separate their funds. *Id.* In addition, Myrtle and McLeod are not "living separate and apart" and they agreed to be financially independent, merely splitting mortgage and common ex-

[¶ 15] Relying on *Baker v. Baker*, 1997 ND 135, ¶ 14, 566 N.W.2d 806, Elof asserts factors such as the establishment of a common residence; long-term sexual, intimate romantic involvement; shared assets or common bank accounts; joint contribution to household expenses; and a recognition of the relationship by the community should be considered in determining whether spousal support should be reduced or terminated.

[¶ 16] However, in *Baker* a provision in the divorce decree specifically provided the support recipient's cohabitation in an informal marital relationship would terminate spousal support. *Id.* at ¶ 5. Accordingly, in *Baker* we used the factors asserted by Elof to determine whether the recipient was cohabiting in an informal marital relationship. In *Cermak*, though, the divorce decree did not provide support would terminate upon cohabitation. 1997 ND 187, ¶ 2, 569 N.W.2d 280. We consequently did not apply the *Baker* factors in *Cermak*. Further, we distinguished *Cermak* from *Baker*, establishing "cohabitation cannot be the sole basis for termination of spousal support at least where cohabitation is not included as a condition for termination in the divorce decree." *Id.* at ¶ 14. Since the decree here did not provide for termination of the payments upon cohabitation, we conclude *Cermak* is the controlling precedent and application of the *Baker* factors to determine whether Myrtle and McLeod are cohabiting in an informal marital relationship is unnecessary.

[¶ 17] Because Elof argues cohabitation and its incidents, sharing of resources and mutual support, are a material change in circumstances, his argument fails under *Cermak*. Elof specifically points out Myrtle and McLeod share household duties such as preparing meals, doing yardwork, and cleaning. Elof also emphasizes they share living expenses, including mortgage payments, home repairs, home insurance, and groceries. In *Cermak*, we rejected the argument a decreased need automatically occurs when a recipient spouse cohabits and emphasized the party alleging a material change in circumstances has occurred bears the burden of proof. *Id.* at ¶ 19. As in *Cermak*, we will not assume cohabitation decreases Myrtle's financial needs. Elof did not present evidence showing Myrtle's cohabitation decreased her financial needs; rather he merely theorized Myrtle's expenses should have decreased because she and McLeod were splitting common expenses.

[¶ 18] Elof also argues the benefits Myrtle receives from her relationship with McLeod go beyond cohabitation and evidence a material change in circumstances. He asserts Myrtle, as McLeod's common law spouse and designated beneficiary, will receive life insurance and pension proceeds upon McLeod's death. He also points out she will receive devises under McLeod's will. However, the trial court properly characterized those benefits as "future" benefits. Myrtle is not currently receiving any of the benefits. Moreover, she will never receive any benefits if she predeceases McLeod and she will not receive benefits under the will or the insurance policy if McLeod designates new beneficiaries.

[¶ 19] We thus conclude the trial court did not clearly err in finding there was no material change in circumstances that would justify a modification of the monthly payments.

[¶ 20] We also note the nature of monthly payments may be considered in determining whether there is a material change in circumstances justifying modification of support.[5] In *Eberhart v. Eberhart*, 301

---

penses. *Id.* We therefore conclude Elof has not shown Myrtle would be entitled to support from McLeod.

5. Because the trial court, in interpreting its own decree, determined the monthly payments to be spousal support rather than part of a property distribution plan and because we affirm there is no material change in circumstances that would justify modification of support, we will not disturb the trial court's determination. *See Dakutak v. Dakutak*, 1997

N.W.2d 137, 143 (N.D.1981), we recognized a party "may be led to accept less than an equitable distribution of property on the basis that a specified monthly payment has been agreed to." We identified the potential inequity resulting when a material change in circumstances could cause a reduction in the monthly payments upon which the party relied on in agreeing to the property distribution although the property distribution is not modifiable. *Id.* However, we explained two ways parties are protected from being misled in such situations. *Id.* First, the payments may be modified only where a change of circumstances justifies modification. *Id.* Thus, after a court determines a material change in circumstances has occurred, the court should then decide whether modification would be just. Second, the court should be more reluctant to modify a decree based on the parties' agreement than a degree based on a court's findings. *Id.*

[¶ 21] Here, the monthly payments create a situation analogous to a rental agreement; Elof uses Myrtle's share of their joint life estate in real property in exchange for a monthly payment. Under the decree, "[Elof] shall be allowed to live in the home" and "farm the parties' real estate" and "[Elof] shall pay to [Myrtle] the sum of $2,250.00 per month, in the nature of permanent alimony and/or spousal support for [those] rights." Elof "shall be entitled to all the income" from the land, a common lessee benefit. Two other circumstances illustrate the rent-like character of the monthly payments. First, the payment provision is included in the "Real Estate" section of the divorce decree. Second, survivorship rights exist; upon the death of either party, the survivor acquires the full life estate. Finally, we note the decree here was based on the agreement of the parties. In light of these facts, the new relationship of the recipient spouse should not be considered a material change of circumstances and modification of the monthly payments would not be justified where the payor spouse's use of land remains unchanged.

## IV

[¶ 22] Elof argues public policy favors eliminating support when the recipient cohabits. He points out cohabitation is unlawful under N.D.C.C. § 12.1–20–10, which provides "[a] person is guilty of a class B misdemeanor if he or she lives openly and notoriously with a person of the opposite sex as a married couple without being married to the other person."

[¶ 23] Whether Myrtle and McLeod are living "as a married couple" under N.D.C.C. § 12.1–20–10 is questionable. *See Olsen v. Koppy*, 1999 ND 87, ¶¶ 3, 21, 593 N.W.2d 762 (declining to exercise supervisory jurisdiction to issue a writ where a prosecutor reasoned "[u]nlawful cohabitation (NDCC 12.1–20–10) requires proof that the defendants hold themselves out as married" and thus opted not to prosecute an individual under N.D.C.C. § 12.1–20–10). Because Myrtle and McLeod are living in Alberta, Canada, N.D.C.C. § 12.1–20–10 is inapplicable to them. Moreover, cohabitation is not unlawful in Alberta and has gained significant acceptance and support from the Alberta courts and legislature. *See Taylor v. Rossu*, 161 D.L.R. (4th) 266 (1998) (striking down a law not affording the right to seek support from a common law spouse); Domestic Relations Amendment Act, R.S.A., 1999 (providing for spousal support in common law relationships). Punishing Myrtle by terminating her monthly payments because of her actions in Alberta that are lawful and accepted there would be inequitable. We thus need not determine whether public policy favors eliminating support when the recipient cohabits.

## V

[¶ 24] Elof argues the trial court did not have authority to award attorney fees.

ND 76, ¶ 6, 562 N.W.2d 750 (recognizing "[i]nterpretation of a judgment is a question of law" but emphasizing "[i]f the same trial judge clarifies an original judgment, we afford the judge's clarification considerable deference").

We disagree. Under N.D.C.C. § 14–05–23, "[d]uring any time in which an action for divorce is pending, the court, upon application of a party, may issue an order requiring a party to pay such support as may be necessary for the support of a party and minor children of the parties and for the payment of attorney fees." Under N.D.C.C. § 1–02–01, statutes "are to be construed liberally" with a view toward effecting their objects and "to promoting justice." In accord, we have previously concluded N.D.C.C. § 14–05–23 provides the trial court with authority to award attorney fees to a party in modification proceedings. *Pitsenbarger v. Pitsenbarger*, 382 N.W.2d 662, 666 (N.D. 1986).

▮▮▮ [¶ 25] Elof alternatively asserts the trial court abused its discretion in awarding attorney fees since Myrtle does not have a need for such an award and since his motion had merit. The key factors in determining the propriety of an award of attorney fees in a divorce action are one spouse's need and the other's ability to pay. *Foreng v. Foreng*, 509 N.W.2d 38, 41 (N.D.1993). The court should consider the property owned by each party, their relative incomes, whether property is liquid or fixed assets, and whether the action of either party has unreasonably increased the time spent on the case. *Lucy v. Lucy*, 456 N.W.2d 539, 544 (N.D. 1990). We will not reverse an award of attorney fees unless the trial court abused its discretion. *Foreng*, at 41.

▮▮▮ [¶ 26] In awarding Myrtle attorney fees, the trial court found she had a monetary need for the award. The trial court emphasized the substantial amount of attorney fees involved (over $8,000), Myrtle's income and property, and the likelihood her income would decrease because of decreasing royalties. The trial court also indicated Elof's motion lacked merit because of caselaw establishing cohabitation alone is insufficient to constitute a material change in circumstances.

[¶ 27] The trial court's determination Elof's motion lacked merit is troublesome. Elof presented complicated issues regarding Myrtle's Canadian common law spouse status and, accordingly, the effect of newly developing Canadian law. His suggestion Myrtle's common law spouse status compelled termination of support was an issue of first impression for this Court. We conclude Elof's motion did have merit.

[¶ 28] However, other evidence supports the trial court's award of attorney fees. According to 1997 income tax forms, Myrtle's adjusted gross income was approximately $69,000. Testimony indicated Myrtle's royalty payments had recently decreased from $20,000 per year to $10,-000 per year. In exhibits, Myrtle approximated her monthly expenses at over $5,000. On his 1993 income tax forms, Elof's adjusted gross income was over $100,000. Elof stipulated, though for purposes of spousal support, his ability to pay was not at issue, and thus discovery of Elof's assets was unnecessary.

[¶ 29] In light of the disparity between Myrtle's and Elof's incomes, Myrtle's prospective reduction in income due to decreased royalties, her substantial monthly expenses, the significant amount of attorney fees involved, and the trial court's awarding of only about half of the attorney fees incurred by Myrtle, we conclude the trial court did not abuse its discretion in awarding attorney fees.

## VI

[¶ 30] We hold the trial court did not err in determining Myrtle and McLeod's relationship does not compel termination of Elof's spousal support obligation by operation of law or pursuant to the parties' oral agreement, did not clearly err in finding

there was no material change in circumstances that would justify a change in spousal support, and did not abuse its discretion in awarding attorney fees. We therefore affirm the order of the trial court.

[¶ 31] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ., concur.

DALE V. SANDSTROM, J., concurs in the result.