2002 ND 159

**Brian J. QUAMME, Plaintiff and Appellant,**

v.

**Joann L. BELLINO, f/k/a Joann L. Quamme, Defendant and Appellee.**

**No. 20020024.**

Supreme Court of North Dakota.

Oct. 15, 2002.

John D. Bullis, Lies & Bullis, Wahpeton, N.D., for plaintiff and appellant.

Mark A. Meyer, Meyer Law Firm, Wahpeton, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Brian J. Quamme appealed from an amended judgment awarding Quamme's former spouse, Joann L. Bellino, permanent spousal support. We hold the trial court retained jurisdiction to make an award of permanent spousal support, the court's finding there was a material change of circumstances justifying an award of permanent spousal support was not clearly erroneous, and the trial court did not abuse its discretion in reserving the issue of whether the spousal support award should terminate upon Quamme's death. We affirm.

## I

[¶ 2] Quamme and Bellino were married in August 1976. In September 1982 their son, Adam, was born, and in September 1984 their daughter, Breanna, was born. The parties were divorced in October 1991. In April 1995, the district court entered an amended judgment awarding Bellino rehabilitative spousal support of $500 per month for four years. In December 1996, the court increased the spousal support to $709 per month, retroactive to April 1995. On March 11, 1999, prior to expiration of the temporary support award, Bellino filed a motion asking the district court to award her permanent spousal support. In a May 12, 1999 order, the district court continued Bellino's motion until September 1, 1999, for the purpose of allowing her to obtain additional financial records from Quamme.

[¶ 3] Bellino renewed her motion for permanent spousal support on February 5, 2000. A hearing was held on May 2, 2000, and on July 24, 2000, the court entered an order denying Bellino's request for permanent spousal support but reserving "the issue of rehabilitative and/or permanent spousal support until such time as the parties' first child becomes emancipated and until a reasonable time after the last child is emancipated."

[¶ 4] On August 17, 2001, Bellino again filed a motion requesting permanent spousal support. A hearing on that motion was held on September 20, 2001. The court entered an order and amended judgment on December 14, 2001, awarding Bellino permanent spousal support of $764 per month from October 2001 until September 2003, and permanent support of $1,500 per month commencing October 2003, to be terminated upon Bellino's death or remarriage. Quamme appealed.

## II

[¶ 5] Quamme asserts the trial court lost jurisdiction to award permanent spousal support when the support issue was not resolved by September 1, 1999, the date to which the court continued Bellino's March 11, 1999 motion for permanent spousal support, and Bellino did not renew the motion until February 5, 2000.

[¶ 6] The issue whether a trial court lacks subject matter jurisdiction to modify an original spousal support order is a question of law which is fully reviewable by this Court on appeal. *Bellefeuille v. Bellefeuille*, 2001 ND 192, ¶ 17, 636 N.W.2d 195. When there has been an initial award of spousal support, the district court retains jurisdiction to modify the award at least as long as the spousal support continues. *Id.* at ¶ 19.

[¶ 7] In an appeal brought by Bellino from a prior amended judgment in this case, she argued the district court erred in failing to specifically retain jurisdiction to award permanent spousal support in the future. In resolving that appeal, this Court in *Quamme v. Bellino*, 540 N.W.2d 142, 147 (N.D.1995), concluded:

At least as long as spousal support continues, the district court retains jurisdiction to award permanent spousal support. If circumstances merit, before the rehabilitative spousal support ends, Bellino may apply for further spousal support, or for reservation of jurisdiction over the issue.

(Citations omitted.)

[¶ 8] Bellino did move for permanent spousal support on March 11, 1999, prior to the termination of the four-year temporary spousal support award which began in April 1995. After a hearing, the district court continued Bellino's motion for permanent spousal support until September 1, 1999, for the purpose of allowing her to

obtain additional financial records from Quamme. The issue was not resolved by September 1, 1999, and Quamme argues the district court lost jurisdiction to award permanent spousal support because Bellino did not formally renew her motion until February 5, 2000. However, Quamme has not directed our attention to any case which holds that a pending motion in a trial court automatically terminates when the court continues the motion to a specified date and the issue is not resolved by that date.

◼ [¶ 9] The facts of this case are clearly distinguishable from the facts in *Bellefeuille v. Bellefeuille*, 2001 ND 192, ¶ 10, 636 N.W.2d 195, wherein this Court held the trial court lost jurisdiction to modify a spousal support award. In *Bellefeuille* the court awarded spousal support in the original divorce decree to the wife "terminat[ing] at the end of the 5th year following entry of the judgment decree granting the divorce or until the death of the wife, whichever shall first occur." *Id.* at ¶ 4. The obligee did not request modification of the award until nearly 16 years after the last spousal support payment was made. Under those circumstances, this Court held the trial court was without jurisdiction to modify the original spousal support award. Here, Bellino moved for a modification of spousal support during the time support payments were being made under the original divorce decree. Before an award of rehabilitative spousal support terminates, the obligee can apply for further support and the trial court retains jurisdiction to act on the request. *Id.* at ¶ 19. Clearly, the trial court retained jurisdiction to act on Bellino's motion for permanent spousal support.

◼ [¶ 10] Furthermore, there is no indication in the district court's order or pronouncements from the bench that the court intended Bellino's motion to expire on September 1, 1999. In the May 12, 1999 order the district court states: "In the event [Bellino's] motion is not resolved on or before September 1, 1999, [Quamme] shall make payments of $400 per month toward the existing child support arrearage owed [Bellino]." While presiding over the May 2, 2000 hearing, the court, in response to a discussion about expert testimony regarding the parties' financial circumstances, stated:

> I didn't anticipate this thing would continue for a year but it takes time to get the information. I understand. So I am not going to bar him at this point. I will see where it goes.

A trial court's clarification of a previously entered decree by that same court is given considerable deference by this Court in construing the original order or decree. *Dakutak v. Dakutak*, 1997 ND 76, ¶ 6, 562 N.W.2d 750; *Anderson v. Anderson*, 522 N.W.2d 476, 478 (N.D.1994). The trial court clearly did not intend the motion would expire on September 1, 1999 if not resolved at that time by the court, and we give deference to the trial court's view of its order continuing the motion.

[¶ 11] Under these circumstances, we conclude the district court did not lose jurisdiction to decide Bellino's motion for permanent spousal support. The motion was timely filed prior to expiration of the temporary spousal support award. Although it took the parties longer than anticipated by the court to secure relevant financial records, there is nothing specific in the court's orders or statements to conclude Bellino's March 11, 1999 motion was to expire prior to the court's resolution of it on the merits or that she needed to obtain an extension. We, therefore, hold the district court retained jurisdiction to resolve the spousal support issue.

## III

■ [¶ 12] Quamme asserts there has been no material change of circumstances since the original award of rehabilitative spousal support to justify a change awarding Bellino permanent spousal support.

■ [¶ 13] While temporary spousal support to rehabilitate a disadvantaged spouse is preferred, spousal support may be required indefinitely to maintain a spouse who cannot be adequately retrained to independent economic status. *van Oosting v. van Oosting*, 521 N.W.2d 93, 100 (N.D.1994). We explained the standard for modifying spousal support in *Wheeler v. Wheeler*, 419 N.W.2d 923, 925 (N.D. 1988):

> To modify spousal support, circumstances must have changed materially. Slight, or even moderate, changes in the parties' relative incomes are not necessarily material. "Material change" means something which substantially affects the financial abilities or needs of a party. The reason for changes in income must be examined, as well as the extent that the changes were contemplated at the time of the agreed decree.

(Citations omitted.)

■ [¶ 14] The party seeking modification of spousal support bears the burden of showing a material change in circumstances warranting a modification. *Schmitz v. Schmitz*, 1998 ND 203, ¶ 5, 586 N.W.2d 490. A district court's determination of changed circumstances justifying a modification of spousal support is a finding of fact, which will only be set aside on appeal if it is clearly erroneous. *Id.* Under N.D.R.Civ.P. 52(a), a finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire record this Court is left with a definite and firm conviction that a mistake

has been made. *Id.* A material change in circumstances means something which substantially affects the parties' financial abilities or needs, and the reasons for changes in income must be examined as well as the extent the changes were contemplated by the parties at the time of the initial decree or a subsequent modification. *Schmalle v. Schmalle*, 1998 ND 201, ¶ 12, 586 N.W.2d 677. A contemplated change is one taken into consideration by the district court in fashioning its original decree. *Schmitz*, 1998 ND 203, ¶ 12, 586 N.W.2d 490. A change which can now be called foreseeable with the benefit of hindsight is not necessarily a change contemplated by the district court at the time of the original divorce decree. *Id.*

[¶ 15] In awarding Bellino rehabilitative spousal support, commencing April 19, 1995, the district court explained its rationale and purpose for making the award, upon finding substantial inequality of income between the parties:

> [Quamme] was and is a professional carrying on a practice in dentistry. [Bellino] had little or no education beyond high school at the time of the divorce and would probably not qualify for much more than a minimum wage paying job had she entered the job market at the time of the divorce.
>
> . . . . [Bellino] has sought to improve her situation by attending the University of Bemidji, Minnesota from which she expects to graduate in May of 1995 with a degree in business. Her employment opportunities should substantially improve at that time; however, she will have loans to repay for her college education.
>
> . . . .
>
> Most of the observations generally made about divorces of this nature, where the spouse of one party provides the income

while the other party is earning a professional degree, are true. Those general observations include the fact that the professional person is much more readily able to better their condition after the divorce and seek to maintain their standard of living and improve their standard of living, while the non-professional spouse lives at a somewhat reduced level and is generally not in a position to improve that level substantially. That is the situation that we have here.

... Spousal support is awarded to [Bellino] commencing April 1, 1995 at the rate of $500.00 per month for a period of four years.[1] This support is awarded for rehabilitative purpose and will assist [Bellino] in meeting some of her accumulated college obligations, as well as provide an opportunity for her to improve her economic condition.

[¶ 16] The evidence shows that Bellino acquired a college degree in business and, after searching many job opportunities, accepted a position as a child protection case agent with the Beltrami County Human Services office in Bemidji. The evidence shows her net income as $1,710 per month. The court found Quamme's income is at least four times Bellino's present income, with his 1999 dental practice tax return showing gross income of $245,307. The evidence also shows that Bellino has continued to seek better paying positions in the area and has applied for two such positions with her current employer, but she was not offered either position.

[¶ 17] In its December 14, 2001 decree, the trial court explained in detail its finding of changed circumstances and reasons for awarding permanent spousal support:

In the present case, the rehabilitative spousal support earlier awarded to Joann has not adequately allowed her to rehabilitate to the degree necessary to maintain anywhere near her pre-divorce standard of living. While she has obtained a college degree, she is still earning net income—about $1,710 per month—of less than one-fourth that of Brian's net income-about $6,860 per month.

... It is not practical for Joann to return to school and try to earn an advanced degree so as to increase her earning ability for a number of reasons. First, she cannot afford to quit her job and lose her monthly earnings. Second, she cannot afford graduate school. Third, even if she could afford graduate school, she is needed at home to raise the parties' children and put them through college. Fourth, even if she could afford graduate school, it is unlikely an advance degree would provide sufficient increased income to offset the time and money it would take to accomplish that degree. And fifth, a better job, with or without schooling, is unlikely because of Joann's age (she is 49), skills, and residence. For all of these reasons, it is clear to the Court that permanent spousal support is called for in this case.

. . . .

[T]his Court contemplated, back in 1995, that Joann would be able to find gainful employment after obtaining her college degree in order to "improve her economic condition." That has not happened.

... This Court also contemplated, back in 1995, that the rehabilitative spousal support would be used by Joann to attend school in order to improve her standard of living substantially. Again, that has not happened.

... Joann, despite using her best efforts, still earns four times less than

1. The amount of temporary rehabilitative spousal support was increased to $709 per month in the court's December 3, 1996 amended judgment.

Brian. Those efforts include a constant search for better employment both within and outside of her current employment agency. She has not even applied for a different job outside her employment agency because she is either not qualified or the job does not pay what she is now earning.

. . . .

The Court concludes by noting that the 15 years of the parties' marriage occurred during the time period when Joann was in the best position to advance economically AND when Brian was in the best position to advance economically. It is common knowledge that once a person reaches their late 30s, the doors to economic advantage are just about closed, especially if one has two young children. Joann has foregone opportunities and has contributed during the marriage to the supporting spouse's increased earning capacity. Permanent spouse [sic] support is appropriate in this case, since Joann, as the economically disadvantaged spouse, cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage.

[¶ 18] The trial court's findings provide a detailed explanation and rationale for its decision to award permanent spousal support subsequent to the court's attempt to mitigate Bellino's disadvantage by the divorce with rehabilitative spousal support. In awarding rehabilitative support in 1995 the trial court contemplated that Bellino, by raising her level of education, would be able to overcome the economic disadvantages caused by the divorce and substantially improve her earning capacity to a level closer to Quamme's earning capacity. For various reasons beyond Bellino's control that has not happened, and the court found that Bellino's inability to substantially improve her earning capacity constitutes

a substantial change of circumstances justifying an award of permanent spousal support. The trial court here, like the trial court in *Schmitz*, 1998 ND 203, ¶ 15, 586 N.W.2d 490, found that in spite of the obligee spouse's good faith effort at rehabilitation she has been unable to obtain substantial enhancement of her economic earning capacity and that failure constitutes a change of circumstances not contemplated by the court and one which justifies an award of permanent spousal support. Under these circumstances, we hold the trial court's finding of a change of circumstances justifying an award of permanent spousal support for Bellino is supported by the evidence and is not clearly erroneous.

IV

[¶ 19] Quamme asserts the trial court erred in failing to specify that Bellino's spousal support award must terminate upon Quamme's "reasonable retirement or death." Nowhere in Quamme's briefing of this issue does he state that he requested that if the court awarded permanent spousal support Quamme's obligation should terminate upon his death or retirement. The district court did, however, state in the December 14, 2001 decree that the spousal support obligation would terminate upon Bellino's "death or remarriage," and that the court was reserving the issue of whether the support obligation "would terminate upon [Quamme's] death."

[¶ 20] This Court has held that a spousal support obligee is entitled to payment from the obligor's estate where the divorce decree directs the obligor to make support payments to the obligee until her remarriage or death. *See Stoutland v. Stoutland's Estate*, 103 N.W.2d 286, 291 (N.D.1960). Following the rationale of *Stoutland*, this Court in *Gierke v. Gierke*, 1998 ND 100, ¶ 28, 578 N.W.2d 522, con-

cluded that, absent modification language in the support award, the obligee is entitled to spousal support from the obligor's estate if the obligor predeceases the obligee.[2] This Court has also concluded that if a spousal support obligor believes his retirement would constitute a change of circumstances he can move to amend his post-retirement spousal support obligation. *Laude v. Laude*, 1999 ND 203, ¶ 9, 600 N.W.2d 848.

[¶ 21] In this case, the district court has reserved the issue whether Quamme's estate would be responsible to continue making support payments if Quamme predeceases Bellino. Under these circumstances, we are unpersuaded the trial court erred in setting the duration of Quamme's spousal support obligation.

## V

[¶ 22] We hold the trial court had jurisdiction to award permanent spousal support in this case, the trial court's finding there is a material change of circumstances justifying an award of permanent spousal support is not clearly erroneous, and the court did not err in failing to require the support award to terminate upon Quamme's reasonable retirement or death. The December 14, 2001 amended judgment of the district court is affirmed.

[¶ 23] MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.

I concur in the result: DALE V. SANDSTROM.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 24] I agree with parts I, II and III of the majority opinion. I concur in part IV with the understanding that upon Brian Quamme's retirement or death a motion to continue or terminate the support payment will not be denied solely on the ground retirement or death was anticipated at the time the order was issued and therefore cannot constitute a change in circumstances.

[¶ 25] In *Stoutland v. Stoutland's Estate*, 103 N.W.2d 286 (N.D.1960), cited by the majority opinion, the issue was whether the statute permitted a trial court to order spousal support after the death of the obligor. There was no reservation of the issue such as there was in this instance. In other similar cases decided by this Court the issue of spousal support after the death of the obligor was not reserved by the trial court but rather spousal support ordered by the trial court was to continue after death. *Gierke v. Gierke*, 1998 ND 100, 578 N.W.2d 522; *Seablom v. Seablom*, 348 N.W.2d 920 (N.D. 1984); *Matter of Estate of Gustafson*, 287 N.W.2d 700 (N.D.1980).

[¶ 26] Prior to August 1, 2001, N.D.C.C. § 14–05–24 provided that a court "from time to time may modify its orders in these respects." Essentially the same language is now found in N.D.C.C. § 14–05–24.1, effective August 1, 2001, *i.e.*, the court "may modify its spousal support orders." But our prior cases construing N.D.C.C. § 14–05–24 have required an "unforeseen material change in circumstances" before a modification in spousal

---

2. In 2001, the legislature amended N.D.C.C. § 14–05–24 (currently codified at N.D.C.C. § 14–05–24.1), which previously stated the court could award spousal support to one party "during life or for a shorter period" to now allow the court to require a party to pay spousal support to the other party "for any period of time." As amended, the statute gives the court authority to award support at least as broadly, if not more so, than the court had under the predecessor statute.

support may be made. *E.g., Cermak v. Cermak*, 1997 ND 187, ¶ 17, 569 N.W.2d 280; *Wheeler v. Wheeler*, 548 N.W.2d 27, 30 (N.D.1996). Death cannot be unforeseen. Yet in this instance, where the trial court reserves the issue of continuation of spousal support after Quamme's death, there can be no contention that death was anticipated, and therefore a motion to discontinue or to continue spousal support is unavailable because no unforeseen change in circumstances exists. Rather, I assume the trial court's purpose was to determine whether Bellino was still in need of spousal support and whether Quamme's estate could continue to pay the support at the time of the subsequent motion. This procedure is apparently authorized by statute and our prior case law. It leaves the parties unsettled although it does allow the court to review the status of the parties at the time of Quamme's death without any other material change of circumstances.

[¶ 27] WILLIAM A. NEUMANN, J., concurs.

KAPSNER, Justice, concurring.

[¶ 28] I concur. Specifically in Section IV of the majority opinion, we hold the trial court was not in error in retaining jurisdiction to decide at a later time whether spousal support may continue after the death of Quamme. That authority derives from N.D.C.C. § 14–05–24, currently codified at N.D.C.C. § 14–05–24.1. However, I write separately to indicate that I do not wish to extend the life of the cases which have held that spousal support continues after the death of the payor spouse merely upon application of language that requires support "during the life of the payee spouse." Those cases were exceptional when decided and should continue to be regarded as unusual. In *Stoutland v. Estate of Stoutland*, 103 N.W.2d 286, 287 (N.D.1960) (citations omitted), the court held the language which directed spousal support "to continue until the remarriage of said plaintiff or her death" was sufficient to create an exception to the "general rule" on the continuity of spousal support. In that case, the court noted "[i]t is the general rule that in the absence of an agreement between the parties or a statute providing otherwise, periodic payments of alimony terminate upon the [payor's] death where the decree is silent as to the duration of the payments." *Id.* at 288–89.

[¶ 29] A similar result was reached in *Estate of Gustafson*, 287 N.W.2d 700 (N.D. 1980). In that case, this Court again referred to the "general rule" that the payor's death terminates the obligation to support. *Id.* at 701. However, spousal support payments were ordered to be continued because the trial court had considered the award of alimony to be part of the property settlement. That analysis was key to this Court's holding that the claim for payments survived the death of the payor husband. *Id.* at 702.

[¶ 30] Likewise, in *Seablom v. Seablom*, 348 N.W.2d 920 (N.D.1984), this Court was faced with a payment that was labeled alimony but held it was actually a part of the property division. *Id.* at 924. The payment was a monthly sum which did not terminate upon the remarriage or death of either party. *Id.* Because the possibility of continuation after the death of the payee spouse which would not serve the purposes for which spousal support was designed, this Court held the payment was a form of property division. *Id.* at 925. Although *Seablom*, at 924, and the later case of *Gierke v. Gierke*, 1998 ND 100, ¶ 28, 578 N.W.2d 522, cited *Stoutland* for the proposition that the obligor's death does not necessarily terminate the payment of spousal support, neither case considered whether the "general rule" applied.

[¶ 31] The "general rule" is more in keeping with the expectations of support. It is an obligation which relates to the existing needs of the recipient and the ability of the payor to give support. *See Schmitz v. Schmitz*, 2001 ND 19, ¶ 10, 622 N.W.2d 176. Therefore, the "general rule" should be applied in the absence of an explicit showing that it was not intended. We have stated that the remarriage of the payee spouse creates a prima facie case for termination of spousal support, unless there are extraordinary circumstances justifying the continuance of support. *Pearson v. Pearson*, 2000 ND 20, ¶ 7, 606 N.W.2d 128. The death of the payor spouse should be similarly treated. The obligation to pay spousal support would presumably terminate on the death of the obligor, absent a clear expression of intent to the contrary. The burden of proving the intent that spousal support payments continue after the obligor's death should be on the party asserting the continuation. *See* 24A Am.Jur.2d *Divorce and Separation* § 1139 (1998). If treated as a prima facie case for termination, an agreement which calls for termination upon the remarriage or death of the recipient spouse, but is silent about the death of the payor spouse, would not be a sufficient indication of an explicit contrary intent. *Id.*

[¶ 32] Such treatment would be consistent with the normal expectation that support obligations terminate at death while recognizing that either the court or the parties to a divorce that is settled by agreement would have the ability to place their situation outside of the application of the "general rule" when circumstances so warrant.

[¶ 33] CAROL RONNING KAPSNER