2007 ND 3

**Therese Joan LUCIER, Plaintiff and Appellant,**

v.

**Lewis Joseph LUCIER, Defendant and Appellee.**

**No. 20060060.**

Supreme Court of North Dakota.

Jan. 11, 2007.

James D. Hovey, Pearson Christensen & Clapp, P.L.L.P., Grand Forks, N.D., for plaintiff and appellant; submitted on brief.

Matthew F. Shimanek, Hammarback, Dusek & Associates, P.L.C., East Grand Forks, MN, for defendant and appellee; submitted on brief.

KAPSNER, Justice.

[¶ 1] Therese Lucier appeals from an amended judgment modifying Lewis Lucier's spousal support obligation. We affirm, concluding the district court's finding of a material change in circumstances is not clearly erroneous.

I

[¶ 2] Lewis and Therese Lucier were married in 1994, and have one child together. In September 2004, Therese Lucier sued for divorce. On August 2, 2005, the parties executed a marital termination agreement, in which they agreed to sell their home in Sammamish, Washington, using some of the proceeds to pay off a mortgage and home equity loan on that home, and to divide the remaining proceeds. They agreed that Therese Lucier would be awarded the parties' Grand Forks home, and Lewis Lucier would execute a quit claim deed conveying his interest in that home to Therese Lucier. Therese Lucier agreed to pay any liens, mortgages and encumbrances on the Grand Forks home, which included paying $2,150.78 per month for the mortgage. The parties also agreed that Lewis Lucier would pay spousal support in the amount of "$2,400 per month payable on the 5th day of each and every month until the sale of the Washington home and distribution of proceeds has been accomplished." The parties agreed Lewis Lucier's spousal support obligation would terminate after the sale of the Washington home. Lewis Lucier agreed to pay $700 per month in child support. The termination agreement was incorporated into a divorce decree that was filed on August 10, 2005.

[¶ 3] When the parties signed the termination agreement, the Luciers had accepted an offer to purchase the Washington property, but the offer was conditioned on the buyer obtaining building permits for the property. The offer allowed the buyer to rescind if the city adopted an ordinance restricting the issuance of new building permits. Lewis Lucier took out a home equity loan on the Washington property to pay his monthly spousal support obligation until the scheduled sale of the property was final in January 2006. In an affidavit Lewis Lucier claimed, and Therese Lucier did not contest, that the City of Sammamish passed an ordinance on August 15, 2005, prohibiting the issuance of new building permits until August 2007. On August 31, 2005, the buyer rescinded the offer to purchase the Washington property.

[¶ 4] After the divorce, Therese Lucier sold the Grand Forks home and moved to Erskine, Minnesota, where she rented an apartment under a one-year lease for $585 per month. Although Therese Lucier was unemployed, she had been a licensed cosmetologist in Minnesota and sought recertification with plans to open a new salon after she received her share of the proceeds from the sale of the Washington property.

[¶ 5]   On November 28, 2005, Lewis Lucier moved to modify his spousal support obligation.   After a hearing, the district court granted the motion, finding:

Testimony presented by [Lewis Lucier] during hearing asserted that, at the time that the Marital Termination Agreement was entered into and Judgment based thereon entered, there was an anticipated imminent sale of the Washington property and further that [Therese Lucier] was expected to remain in Grand Forks so that their [child] could continue to attend Century Elementary School. He asserted further that, based upon those circumstances, a temporary spousal support award for [Therese Lucier] was arrived at which would allow her to maintain the Grand Forks home.   [Lewis Lucier] testified that, shortly after divorce, the sale of the Washington state property fell through, [Therese Lucier] sold the Grand Forks property, and she then relocated to Erskine, Minnesota with the parties' [child].   He testified further that although the parties both were confident that the sale pending at the time of divorce would culminate, there was also discussion between the two parties with regard to the need for the spousal support issue to be re-addressed if it did not.   (The court noted from [Lewis Lucier's] testimony as well as [Therese Lucier's] affidavit that both parties were apparently aware that this sale was conditioned upon the local county in Washington approving building permits, and further that the local government was also considering a moratorium on building permits.   Such a moratorium went into effect after divorce.).   He also indicated that the Washington property remains unsold although the selling price has been reduced substantially, and that the equity loan proceeds on that property which he was utilizing for his monthly spousal support obligation have been exhausted. Although [Therese Lucier] had filed a responsive affidavit prior to hearing to that filed by [Lewis Lucier] in support of his motion, she was not cross-examined on its content during hearing. From documentation received during hearing, however, it is clear that it was the intent of the parties at time of divorce, despite a different earlier agreement between them at a pre-divorce mediation, that all interest in the Grand Forks property would be transferred to [Therese Lucier] subject to its existing indebtedness, and further that she would be free to sell that property without restriction.   However, unrefuted was [Lewis Lucier's] assertion that, at time of divorce, [Therese Lucier] had a $2,150.78 monthly mortgage expense on the property she received in the divorce. Also unrefuted was that her current monthly rent approximates $600.00 monthly.   Finally, and also unrefuted by [Therese Lucier], is the fact that the parties both acknowledged the need to re-address [Lewis Lucier's] ongoing spousal support obligation should the Washington property not sell as anticipated at time of divorce.

The court found the failure of the Washington property to sell, the exhaustion of the home equity loan proceeds used to meet Lewis Lucier's spousal support obligation, and the reduction in Therese Lucier's living expenses, are all material changes of circumstances.   The court reduced Lewis Lucier's spousal support obligation from $2,400 per month to $1,000 per month until August 2006, and thereafter to $700 per month if the Washington property has not sold.

II

[¶ 6]   Therese Lucier argues the district court's findings of material changes in

circumstances are clearly erroneous because the parties contemplated these changes could occur at the time they entered into the termination agreement.

[¶ 7] "When the original divorce judgment includes an award of spousal support, the district court retains jurisdiction to modify the award." *Rothberg v. Rothberg*, 2006 ND 65, ¶ 10, 711 N.W.2d 219. In *Wheeler v. Wheeler*, 419 N.W.2d 923, 925 (N.D.1988) (citations omitted), we explained the standard for modifying spousal support:

> To modify spousal support, circumstances must have changed materially. Slight, or even moderate, changes in the parties' relative incomes are not necessarily material. "Material change" means something which substantially affects the financial abilities or needs of a party. The reason for changes in income must be examined, as well as the extent that the changes were contemplated at the time of the agreed decree.

A change that was contemplated by the parties at the time of the initial decree is not a material change in circumstances. *Gibb v. Sepe*, 2004 ND 227, ¶ 7, 690 N.W.2d 230. A contemplated change is one the parties considered when entering a termination agreement or one the district court considered in fashioning its original decree, but a change is not necessarily contemplated simply because it can now be called foreseeable with the benefit of hindsight. *Quamme v. Bellino*, 2002 ND 159, ¶ 14, 652 N.W.2d 360. When a decree is based on a stipulated agreement, we view the issue of whether the change was contemplated with greater scrutiny, because the parties are in a better position to understand their circumstances. *Wheeler v. Wheeler*, 548 N.W.2d 27, 30 (N.D.1996). The party seeking modification bears the burden of proof. *Rothberg*, at ¶ 10.

[¶ 8] The district court's determination whether there has been a material change in circumstances warranting modification of spousal support is a finding of fact and will not be reversed on appeal unless it is clearly erroneous. *Rothberg*, 2006 ND 65, ¶ 10, 711 N.W.2d 219. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or upon review of all the evidence, we are left with a definite and firm conviction a mistake has been made. *Ebach v. Ebach*, 2005 ND 123, ¶ 10, 700 N.W.2d 684.

### A

[¶ 9] Therese Lucier claims it was foreseeable that her living expenses might decrease after the divorce, because she was awarded the parties' interest in the Grand Forks property and was free to sell it. She argues the district court's finding that her reduced living expenses was a material change in circumstances is clearly erroneous.

[¶ 10] A change is not necessarily contemplated simply because it can now be called foreseeable with the benefit of hindsight. *Quamme*, 2002 ND 159, ¶ 14, 652 N.W.2d 360. The parties agreed that Lewis Lucier would pay $2,400 per month in spousal support and $700 per month in child support until the Washington property was sold, which would provide Therese Lucier with enough money to pay the mortgage and her monthly living expenses until she received her share of the proceeds from the sale of the Washington property. The district court found the parties anticipated and agreed to an amount of spousal support that would allow Therese Lucier and the parties' child to continue living in the Grand Forks home so the child would be able to continue attending the same school. Although it may be foreseeable that Therese Lucier

could sell the Grand Forks home, there is no evidence the parties contemplated that she would sell the home and greatly decrease her need for spousal support within months of the divorce.

[¶ 11] We are not left with a definite and firm conviction the district court made a mistake in finding that Therese Lucier's sale of the Grand Forks home and the resulting reduction in her living expenses was a material change in circumstances. We conclude the court's finding is not clearly erroneous.

B

[¶ 12] Therese Lucier also argues the parties contemplated that the Washington property might not sell and the proceeds of the home equity loan could be exhausted when they entered into the termination agreement, and therefore the district court's findings about these changes are clearly erroneous. She claims the changes were contemplated because the offer to purchase the property was conditioned on obtaining building permits and the parties were aware that there was going to be moratorium on building permits.

[¶ 13] We concluded the district court's finding that Therese Lucier's reduction in living expenses is a material change in circumstances is not clearly erroneous, therefore, whether the court's findings about the failure of the Washington property to sell and the exhaustion of the home equity loan proceeds are clearly erroneous are issues that will not affect the outcome of this case, and we will not address them.

C

[¶ 14] Therese Lucier nevertheless claims the district court did not adequately consider that Lewis Lucier's original spousal support obligation was based on the parties' termination agreement and therefore should not have been modified.

[¶ 15] We encourage agreements between divorcing parties and have recognized that stipulated spousal support awards should be changed only with great reluctance. *Rothberg*, 2006 ND 65, ¶ 11, 711 N.W.2d 219. We have also recognized that a spousal support award based on a stipulated agreement can be modified if there is a material change in circumstances. *Meyer v. Meyer*, 2004 ND 89, ¶ 8, 679 N.W.2d 273. We are not persuaded that the district court failed to consider the spousal support obligation was based on a stipulated agreement. The court adequately considered the parties' agreement, but concluded Therese Lucier's reduction in living expenses was a material change in circumstances justifying a modification of the support obligation. We conclude the district court's finding is not clearly erroneous.

III

[¶ 16] Therese Lucier argues the district court did not adequately explain the reduced amounts of spousal support. She claims the court's rationale for selecting the modified support amounts is not discernable through inference or deduction, and therefore the court's decision is clearly erroneous.

[¶ 17] When a district court modifies spousal support, the court must adequately explain its rationale in determining the new support amount. *See Meyer*, 2004 ND 89, ¶ 9, 679 N.W.2d 273 (court did not adequately explain its rationale for determining the amount of the spousal support reduction). In determining a modified support obligation, the court must evaluate the obligor's current ability to pay along with the recipient's current need for support and award support in an amount that is adequately proportional to the reduction in the obligor's

income, taking into consideration the recipient's need for support. *Id.* We generally remand for clarification of missing or conclusory findings of fact, but we will not remand if we can infer or deduce the district court's rationale. *Wheeler*, 548 N.W.2d at 30. "We may rely upon implied findings of fact when the record enables us to understand the factual determinations made by the [district] court and the basis for its conclusions of law and judgment." *Id.*

[¶ 18] The district court reduced Lewis Lucier's spousal support obligation from $2,400 per month to $1,000 per month until August 2006, at which time the obligation would be reduced to $700 per month if the Washington property still had not sold. The court found Therese Lucier's monthly housing expense had decreased from $2,150.78 to approximately $600 per month. The court found the failure of the Washington property to sell and the exhaustion of the equity loan proceeds had substantially affected Lewis Lucier's financial ability to continue paying $2,400 per month in spousal support.

[¶ 19] Although the court did not directly explain how it determined the amounts of the modified spousal support obligation, we can infer the court's rationale for its decision. The parties agreed Lewis Lucier would use the proceeds from the home equity loan to pay his spousal support obligation through the expected sale of the Washington property in January 2006 because he could not otherwise afford to pay the agreed upon amount. After the offer on the property was rescinded, the loan proceeds were exhausted and Lewis Lucier was no longer financially able to meet his support obligation. Meanwhile, Therese Lucier's living expenses were drastically reduced after she sold the Grand Forks home. Similar to the original spousal support award, the modified support award provides sufficient support to allow Therese Lucier to pay her monthly housing expenses. The court evaluated Lewis Lucier's ability to pay support along with Therese Lucier's need for support when it determined the amount of Lewis Lucier's modified support obligation, and we conclude the court's findings are sufficient to understand the court's rationale for determining the modified support amounts.

## IV

[¶ 20] We affirm the amended judgment modifying Lewis Lucier's spousal support obligation.

[¶ 21] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.